# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 26, 2013 Session

## THE COMMISSIONERS OF THE POWELL-CLINCH UTILITY DISTRICT v. UTILITY MANAGEMENT REVIEW BOARD

### Direct Appeal from the Chancery Court for Davidson County
### No. 111608-IV    Russell T. Perkins, Chancellor

### No. M2012-01806-COA-R3-CV  - Filed July 31, 2013

Respondent utility district commissioners appeal the trial court's determination that a ground for removal from office added to Tennessee Code Annotated § 7-82-307(b)(2), as amended effective June 2009, may be applied retrospectively to acts occurring prior to the effective date of the amendment to remove them from office. They also appeal the trial court's determination that the additional ground for removal of commissioners, "failing to fulfill the commissioner's or commissioners' fiduciary responsibility in the operation or oversight of the district," is not  unconstitutionally vague. We reverse retrospective application of the additional ground for removal contained in the statute, as amended; hold that the statute is not void for vagueness; and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Affirmed in Part, and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Charles Taylor, *Pro Se*.

Charles Oldham, *Pro Se*.

Jerry Shattuck, *Pro Se.*

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General and Ann Louise Vix, Senior Counsel, for the Appellee, Utility Management Review Board.

## OPINION

This dispute requires us to determine whether a 2009 amendment to Tennessee Code Annotated § 7-82-307(b)(2), which adds "failing to fulfill the commissioner's or commissioners' fiduciary responsibility in the operation or oversight of the district" as a ground for the removal of a commissioner from a utility district, may be applied retrospectively to remove utility district commissioners from office for acts allegedly committed prior to the effective date of the amendment. The facts relevant to our disposition of the issues raised on appeal are not disputed.

Charles Taylor (Mr. Taylor), Charles Oldham (Mr. Oldham) and Jerry Shattuck (Mr. Shattuck, collectively, "the Commissioners") are members of the Powell-Clinch Utility District ("the District"), a gas utility district. On June 15, 2011, the Tennessee Utility Management Review Board ("the UMRB") initiated a contested case hearing seeking to remove the Commissioners from office pursuant to Tennessee Code Annotated § 7-82-702(13) and § 7-82-307(b). In its petition, the UMRB stated that, pursuant to section 7-82-307(b)(2)(A), the Comptroller of the Treasury ("the Comptroller") had forwarded the results of an October 2010 investigative audit report concerning the District to the UMRB for review, and that on April 7, 2011, the UMRB unanimously voted to conduct a contested case hearing to remove the Commissioners from office. The UMRB specified multiple findings of the Comptroller in its petition, including the District's failure to reconcile bank accounts and customer accounts receivable on a timely basis; reimbursement to the Commissioners for unnecessary transportation costs; the failure to review or oversee charges and purchases; the failure to adequately supervise the former District manager, resulting in the misappropriation of approximately $100,000 from the District; the failure to supervise employee receivables and purchasing programs; the failure to implement adequate safeguards to prevent abuse of District assets and property; the failure to adequately supervise and review adjustments to customer bills; over-spending for parties and unapproved conferences; payment for spouses and guests to travel to a Costa Rica resort; and retaliation against individuals providing information leading to the Comptroller's audit. The UMRB alleged 28 separate counts of the failure to fulfill fiduciary responsibilities in the operation and oversight of the District as grounds for removal from office pursuant to Tennessee Code Annotated § 7-82-301(b)(2)(B).

Acting *pro se*, the Commissioners answered in July 2011, denying allegations of wrong-doing. The Commissioners also filed six motions to dismiss the UMRB's petition. In their motions, the Commissioners asserted that the UMRB lacked jurisdiction to remove them from office because the Administrative Procedures Act ("APA") is not applicable to utility districts, and that an April 2011 UMRB vote rescinded the decision to remove them from office and was final and binding. The Commissioners also asserted that the alleged

ground for removal "constitute[d] impermissible disparate treatment [of the Commissioners] from other similarly situated public officials," and that the terms "fiduciary responsibility" and "fiduciary responsibility in the context of the operation or oversight of a utility district" were not defined by the statute. They further submitted that, under Tennessee Code Annotated § 8-47-101, public officials in Tennessee may be removed from their positions only upon a finding that they knowingly or willfully committed misconduct in office, or knowingly or willfully neglected to perform a required duty. The Commissioners asserted that, prior to June 11, 2009, the effective date of the amendment to section 7-82-307, utility district commissioners likewise could be removed from office only for knowingly or willfully committing misconduct in office, or knowingly or willfully neglecting to fulfill any duty imposed by law. The Commissions moved to dismiss the UMRB's petition on the basis that the UMRB impermissibly sought to apply the June 2009 amendments retroactively to acts that allegedly occurred prior to the effective date of the amendment. They further asserted that, prior to the June 2009 amendment, a contested case proceeding before the UMRB could be brought only upon a request for removal brought by twenty percent of the district customers, and that the 2009 amendment provided that a contested case proceeding also could be commenced based upon an investigative audit report from the Comptroller. The Commissioners asserted that the amendments to the section were substantive where they altered the procedural mechanism for bringing a contested case proceeding and added an additional ground for the removal of commissioners from office. The Commissioners further asserted that the UMRB exceeded its authority where it alleged facts outside the parameters of the Comptroller's investigative report. The Commissioners additionally asserted that two of the UMRB's members were biased and had conflicts of interest.

The UMRB treated the Commissioners' motions as motions for summary judgment where they were supported by documents and affidavits outside the pleadings, and the matter was heard by an administrative law judge ("ALJ") in September 2011. The ALJ determined that the UMRB is a "state board" and that the APA therefore controlled the matter. It dismissed the Commissioners' motion on that basis. The ALJ also dismissed the Commissioners' motion on the basis of the UMRB's April 2011 actions, determining that the UMRB chose to delay ouster proceedings but did not decide to abandon the matter. The ALJ also determined that, although the 2009 statutory amendments added a new, additional procedural mechanism to oust commissioners from office, the amendment did not affect any substantive legal rights where the removal of an official for misconduct "is certainly not new in Tennessee." It accordingly dismissed the Commissioners' motion on that basis. The ALJ also dismissed the Commissioners' motion alleging that the UMRB exceeded its authority by identifying grounds for removal that were not included in the Comptroller's audit. The ALJ stated that it was without authority to determine whether Tennessee Code Annotated § 7-82-307(b)(2), as amended, is unconstitutional or was being applied in an unconstitutional manner, but determined that the Commissioners offered no factual support of their

constitutional allegations and accordingly denied their motions predicated on constitutional grounds. The ALJ finally determined that the Commissioners had failed to allege any facts in support of their assertion that members of the UMRB were biased or had any direct interest in the matter, and denied their motion on that basis. The ALJ entered its order denying all six of the Commissioners' motions on October 19, 2011, and the Commissioners sought interlocutory appeal and a stay of the matter. The UMRB did not oppose the motion for stay.

The Commissioners filed a petition for interlocutory appeal in the Chancery Court for Davidson County in November 2011. In their petition, the Commissioners asserted that the term "fiduciary responsibility" contained in the June 2009 amendment to section 7-82-307 is unconstitutionally vague where the statute neither defines the term nor explains what it constitutes. The Commissioners also asserted that the amendment adding the failure to fulfill fiduciary responsibility as a ground for removal from office resulted in an impermissible disparate treatment of utility district commissioners where it applies only to those commissioners and not to other public officials. They additionally asserted that the UMRB's attempts to remove them from office on the basis of a failure to fulfill fiduciary responsibility resulted in a prohibitive retroactive application of the 2009 amendments where the UMRB sought removal based on acts which allegedly occurred prior to the effective date of the amendment. The Commissioners finally asserted that the UMRB exceeded its statutory authority and rules set forth by the UMRB itself by considering acts not contained in the Comptroller's investigative report.

The UMRB replied in February 2012 and the matter was heard by the trial court in April 2012. Finding no rule or statute governing review of an ALJ's ruling on a motion for summary judgment, the trial court reviewed the matter in accordance with the Tennessee Rules of Civil Procedure governing summary judgment. The trial court reversed summary judgment in favor of the UMRB on the issue of whether the UMRB's ouster authority was limited to acts of the Commissioners identified in the Comptroller's investigative audit report where the contested case hearing was conducted pursuant to Tennessee Code Annotated § 7-82-307(b)(2)(A). In so holding, the trial court determined that the UMRB had the authority to address all prohibited conduct of utility district commissioners on its own initiative, but if it chose to do so the contested case hearing should be conducted according to section 7-82-307(b)(3)(A). The trial court declined to address the issue of whether the ALJ erred in finding that the Commissioners had failed to assert facts in support of their contention that members of the UMRB were biased or had a conflict of interest on the basis that the issue did not appear to have been raised for review and that the motion to dismiss on this issue, and responses thereto, were not included in the administrative record transmitted to the court for review. The trial court affirmed the ALJ's determination that the statute was not unconstitutionally vague; determined that any disparate treatment of utility district

commissioners and other public officials is supported by a reasonable relationship to a legitimate state interest; and determined that application of the 2009 statute as amended was not an impermissible retroactive application of the law where it did not place a new obligation on district utility commissioners, but clarified the existing statutory ground for removal for neglecting "to perform any duty imposed upon such member by law." The trial court determined that the amendment accordingly is procedural and remedial in nature.

In June 2012, the Commissioners filed a motion to alter or amend or, in the alternative, for permission to seek an interlocutory appeal. On July 31, 2012, the trial court denied the Commissioner's motion to alter or amend and determined that its May 2012 order was a final judgment and that the Commissioners accordingly were entitled to appeal as a matter of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. The Commissioners filed a timely notice of appeal to this Court.

### *Issues Presented*

The Commissioners (hereinafter, "Appellants") present two issues for our review:

1.   May a new ground for removal of utility district commissioners from office, first set forth in a legislative amendment to [Tennessee Code Annotated ] section 7-82-307, effective June 11, 2009, be applied retroactively against those commissioners for alleged acts or omissions which occurred prior to June 11, 2009?

2.   Is the new ground for removal of utility district commissioners from office set forth by amendment to [Tennessee Code Annotated ] section 7-82-307, effective June 11, 2009, namely "failing to fulfill the commissioner's or commissioners' fiduciary responsibility in the operation or oversight of the district," without the knowing or willful element previously required and without any provisions for standards or guidelines, unconstitutionally vague?

### *Standard of Review*

The construction of a statute and the application of a statute to the facts of a particular case are questions of law. *E.g., Gautreaux v. Internal Med. Educ. Found*., 336 S.W.3d 526, 531 (Tenn. 2011) (citation omitted). We review questions of law *de novo*, with no presumption of correctness for the determination of the trial court. *Id*. Where the statutory language is clear and unambiguous, "it is our duty to follow it." *Id*. "Where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given

effect." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 214 (Tenn.2012)(quoting *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn.2007)). The courts "'presume that the legislature says in a statute what it means and means in a statute what it says there.'" *Id*. (quoting *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 803 (Tenn. 2000) (quoting *BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App.1997))). Thus, where the statutory language is clear, we apply the plain and normal meaning of the words chosen by the General Assembly, interpreting the statute so as to effectuate the General Assembly's intent "'without a forced interpretation that would limit or expand the statute's application.'" *State v. White*, 362 S.W.3d 559, 566 (Tenn. 2012) (quoting *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)). "If the statute is ambiguous, however, we may look to other sources, such as the broader statutory scheme and the history of the legislation." *Id*. (citing *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010)).

### *Retroactive Application of Amendment to Section 7-82-307(b)*

We turn first to Appellants' assertion that the UMRB's petition to remove them from office for the failure to fulfill their fiduciary duty results in an impermissible retrospective application of law. Prior to June 11, 2009, the Utility District Law of 1937, codified at Tennessee Code Annotated § 7-82-101, *et. seq*., provided, in relevant part, that:

> Upon the petition of at least twenty percent (20%) of the customers of a utility district to the utility management review board requesting the removal of a member or members of the utility district board of commissioners, the board shall conduct a contested case hearing within the service area of the utility district on the question of whether such member or members should be removed from office and a new member or members appointed or elected.

Tenn. Code Ann. § 7-82-307(b)(1)(2005). It further provided, in relevant part:

> If the board concludes the member or members of the utility district board of commissioners has knowingly or willfully committed misconduct in office or has knowingly or willfully neglected to perform any duty imposed upon such member by law, then the board shall issue an order removing such member from office.

Tenn. Code Ann. § 7-82-307(b)(2)(2005).

Effective June 11, 2009, the General Assembly amended section 7-82-307(b) to add:

If the comptroller of the treasury investigates or conducts an audit of a utility

district, the comptroller shall forward to the utility management review board any published investigative audit reports involving a utility district incorporated under this chapter. The board shall review those reports and may conduct a contested case hearing on the question of whether utility district commissioners should be removed from office for knowingly or willfully committing misconduct in office, knowingly or willfully neglecting to fulfill any duty imposed upon the member by law, or failing to fulfill the commissioner's or commissioners' fiduciary responsibility in the operation or oversight of the district.

Tenn. Code Ann. § 7-82-307(b)(2)(A)(2011). Former subsection 307(b)(2) was renumbered and amended to provide, in relevant part:

If the board concludes the member or members of the utility district board of commissioners has knowingly or willfully committed misconduct in office or has knowingly or willfully neglected to perform any duty imposed upon such member by law, or failed to fulfill the commissioner's or commissioners' fiduciary responsibility in the operation or oversight of the district, then the board shall issue an order removing such member from office.

Tenn. Code Ann. § 7-82-307(b)(2)(B)(2011). Thus the 2009 amendments added a mechanism by which a contested case hearing can be conducted by the UMRB, and added "failing to fulfill the commissioner's or commissioners' fiduciary responsibility in the operation or oversight of the district" as a ground for removal from office. As noted above, the contested case proceeding before the ALJ proceeded pursuant to subsection 307(b)(2)(A).

In its May 2012 order, the trial court noted that "[t]he duty of a public official to adhere to his or her fiduciary responsibilities has been part of the law of Tennessee for nearly two centuries[,]" and that Tennessee Code Annotated § 7-82-307(b) as it existed prior to the 2009 amendment referenced utility district commissioner's fiduciary duties where it provided for removal from office for neglecting "to perform any duty imposed upon such member by law." The trial court additionally observed that a public official does not have a vested right in their office, and determined that the June 2009 amendment to section 7-82-307(b) did not create a new obligation or punishment, but "clarified . . . another means of redress for violation of an already existing duty." It additionally determined that the provision of the 2009 amendment permitting the UMRB to conduct a contested case hearing following review of an audit or investigation by the Comptroller merely provided an alternative means of relief and accordingly was procedural in nature. The trial court accordingly held that Tennessee Code Annotated § 7-82-307(b)(2)(A) could be applied retrospectively in this matter.

Notwithstanding their contention that "failing to fulfill . . . fiduciary responsibility in the operation or oversight of the district" is unconstitutionally vague, Appellants acknowledge in their brief to this Court that Tennessee law historically has required public officials to adhere to their fiduciary responsibilities. They also appear to concede that the portion of the 2009 amendments granting the UMRB the authority to initiate a contested case based upon the Comptroller's investigative audit is procedural in nature. Appellants contend, however, that section 7-82-307(b) as it existed prior to June 2009 provided that a commissioner could be removed from office only for knowingly or willfully committing misconduct in office or knowingly or willfully neglecting to perform any duty imposed by law. Appellants contend that the removal of a commissioner from office for the "mere" failure to fulfill a fiduciary responsibility in the operation of oversight of the district is a "new and substantive" ground for removal that "substantially lowers the bar for removal" where it removes the elements of knowing and wilfulness. Appellants quote *Doe v. Sundquist*, 2 S.W.3d 919 (Tenn. 1999), in support of their argument that the ground for removal based on conduct or omissions that are not knowing or willful "create a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already passed."

The UMRB, on the other hand, asserts that the trial court correctly determined that the 2009 amendments to the statute did not create a new duty for utility district commissioners where the fiduciary duties of public officers are implicit in Tennessee law. It further asserts that application of the statute as amended does not impair any vested right where a public official has no vested right to their office, and that application of the statute as amended advances the public interest. The UMRB contends that the trial court correctly determined that the 2009 amendment was procedural and remedial and not substantive in nature.

The courts of this State have long held that, despite the prohibition against retrospective laws contained in Article I, Section 20 of the Tennessee Constitution,[1] "'not every retrospective law . . . is objectionable in a Constitutional sense.'" *Estate of Bell v. Shelby County Health Care Corp.*, 318 S.W.3d 823, 829 (Tenn. 2010)(quoting *Collins v. E. Tenn., Va. & Ga. R.R.*, 56 Tenn. (9 Heisk.) 841, 847 (1874)). Rather, our courts have held that the constitutional provision mandates "only that no retrospective law which impairs the obligation of contracts, or divests or impairs vested rights, shall be made." *Id.* (quoting *Ford Motor Co. v. Moulton*, 511 S.W.2d 690, 696 (Tenn.1974) (quoting *Shields v. Clifton Hill Land Co.*, 94 Tenn. 123, 148, 28 S.W. 668, 674 (1894))); (citing *Dark Tobacco Growers' Coop. Ass'n v. Dunn*, 150 Tenn. 614, 632, 266 S.W. 308, 312 (1924)). Therefore, the

---

[1] Article I, Section 20 of the Tennessee Constitution provides:

That no retrospective law, or law impairing the obligations of contracts, shall be made.

retrospective application of a law that is procedural or remedial in nature is not prohibited unless application of that law would impair a contract obligation or a vested right. *Id.* (citations omitted). A procedural statute is one that "'defines the . . . proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right.'" *Doe v. Sundquist*, 2 S.W.3d 919, 923 (Tenn. 1999) (quoting *Kuykendall v. Wheeler*, 890 S.W.2d 785, 787 (Tenn.1994) (citation omitted)). A remedial statute is one that "provides the means by which a cause of action may be effectuated, wrongs addressed, and relief obtained." *Id.* (citing *Dowlen v. Fitch*, 196 Tenn. 206, 211-12, 264 S.W.2d 824, 826 (1954)).

The retrospective application of "substantive legal changes" that "take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed[]" is constitutionally impermissible, however. *Estate of Bell*, 318 S.W.3d at 829 (quoting *Doe v. Sundquist*, 2 S.W.3d at 923 (quoting *Morris v. Gross*, 572 S.W.2d 902, 907 (Tenn. 1978)); cf. *Kuykendall v. Wheeler*, 890 S.W.2d 785, 787 (Tenn. 1994) (noting that "[w]hether a statute applies retroactively depends on whether its character is 'substantive' or 'procedural.')). "Statutes are presumed to operate prospectively unless the legislature clearly indicates otherwise." *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998).

The language of the statute at dispute in this case does not clearly indicate that the General Assembly intended the amendments to be applied retroactively. However, the initial issue in this case is whether, as Appellants contend, the amendment in fact adds an entirely new ground for removal of utility district commissioners from office, or whether the trial court correctly determined that the statutory amendment simply added language to the subsection clarifying a pre-existing basis for removal. In short, the preliminary question posed by this matter is whether a district utility commissioner may be removed from office for the failure to fulfill his or her fiduciary duty in the oversight or operation of the utility district, notwithstanding the absence of the elements of knowing or willfulness, prior to the 2009 amendments.

When interpreting a statute, we seek to ascertain and effectuate the General Assembly's intent, neither unduly restricting nor expanding the statute beyond its intended scope in light of the context of the entire statute and the natural and ordinary meaning of the statutory language. *Hathaway v. First Family Fin. Servs., Inc.*, 1 S.W.3d 634, 640 (Tenn. 1999) (citations omitted); *JJ & TK Corp. v. Bd. of Comm'rs*, 149 S.W.3d 628, 630–31 (Tenn. Ct. App.2004) (citations omitted).

As noted above, prior to June 2009, a commissioner could be removed from office under section 7-82-307(b)(2) if he or she "knowingly or willfully committed misconduct in office or [] knowingly or willfully neglected to perform any duty imposed upon such member

by law[.]" Tenn. Code Ann. § 7-82-507(b)(2)(2005). We additionally note that, although section 7-82-107 provides that Title 7, Chapter 82 is "complete in itself and shall be controlling," the "ouster" provisions contained in subsection 307 prior to 2009 mirrored the general provision providing for the removal from office of public officers contained at section 8-47-101, *et. seq.*, which provides, in relevant part:

> Every person holding any office of trust or profit, under and by virtue of any of the laws of the state, either state, county, or municipal, except such officers as are by the constitution removable only and exclusively by methods other than those provided in this chapter, who shall knowingly or willfully commit misconduct in office, or who shall knowingly or willfully neglect to perform any duty enjoined upon such officer by any of the laws of the state, or who shall in any public place be in a state of intoxication produced by strong drink voluntarily taken, or who shall engage in any form of illegal gambling, or who shall commit any act constituting a violation of any penal statute involving moral turpitude, shall forfeit such office and shall be ousted from such office in the manner hereinafter provided.

Tenn. Code Ann. § 8-47-101. Accordingly, our case law considering the removal of public officials from office under section 8-47-101 is instructive in this case with respect to whether removal from office for conduct that is arguably neither willful nor knowing "take[s] away or impair[s] vested rights acquired under existing laws or create[s] a new obligation, impose[s] a new duty, or attach[es] a new disability in respect of transactions or considerations already passed."[2] *Estate of Bell v. Shelby County Health Care Corp.*, 318 S.W.3d 823, 829 (Tenn. 2010) (citations omitted).

The proceedings defined by the constitution and statutes provide the exclusive proceedings by which a public official may be removed from office. *Snow v. Pearman*, 462, 436 S.W.2d 861, 863 (1968); *Country Clubs, Inc. v. City of Knoxville*, 395 S.W.2d 789, 793 (1965); *Johnson v. Williamson*, No. 01A01-9005-CH-00154, 1991 WL 27376, at *2 (Tenn. Ct. App. Mar. 6, 1991). When considering the removal of a public official from office pursuant to "the ouster statute" contained in Title 8, Chapter 47, we have noted that the purpose of the statute is two-fold. First, it provides a mechanism to "'rid the public of unworthy officials.'" *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 198 (Tenn. Ct. App. 2000) (quoting *State ex rel. Milligan v. Jones*, 143 Tenn. 575, 577, 224 S.W. 1041, 1042

---

[2]The statutes additionally provide for the removal of officials convicted of crimes from public office. Tennessee Code Annotated § 40-20-114; *State ex rel. Carney v. Crosby*, 255 S.W.3d 593 (Tenn. Ct. App. 2008). Additionally, Tennessee Code Annotated § 29-35-101, *et seq.* provides for the removal of a person holding office illegally.

(1920)).  Second, the statute seeks "'to improve the public service, and to free the public from an unfit officer.'"  *Id.* (quoting *State v. Howse*, 134 Tenn. 67, 78, 183 S.W. 510, 513 (1915)).  However, "'ouster proceedings should not be brought unless there is a clear case of official dereliction.'"  *State ex rel. Carney v. Crosby*, 255 S.W.3d 593, 597 (Tenn. Ct. App. 2008)(quoting *Tennessee ex rel. Leech v. Wright*, 622 S.W.2d 807, 818-19 (Tenn. 1981) (citing *State ex rel Wilson v. Bush*, 141 Tenn. 229, 208 S.W. 607 (1919); *McDonald v. Brooks*, 215 Tenn. 535, 387 S.W.2d 803 (1965))).  Thus, the plaintiff in an ouster proceeding carries a heightened burden of proof to demonstrate that the public officer knowingly or willfully committed misconduct in office, or knowingly or willfully neglected to perform any duty enjoined by the laws of this State.  *Id.*  For the purposes of the ouster statute, the "knowingly" and "willfully" elements "'are not confined to a studied or deliberate intent to go beyond the bounds of the law but also encompass a mental attitude of indifference to consequences or failure to take advantage of means of knowledge of the rights, duties or powers of a public officer[.]'"  *State ex rel. Leech v. Wright*, 622 S.W.2d 807, 817 (Tenn. 1981) (quoting *Jordan v. State*, 217 Tenn. 307, 397 S.W.2d 383 (1965)).  To constitute misconduct that is willful or knowing, the public official's conduct must exceed "'simple negligence.'"  *State ex rel. Carney*, 255 S.W.3d at 598 (quoting *Jordan*, 397 S.W.2d at 399).  Further, "mere mistakes in judgment will not suffice" to remove a public officer from office under the ouster statute.  *Vandergriff v. State ex rel. Davis*, 206 S.W.2d 395, 397 (Tenn. 1937).[3]

As the trial court noted, a public official has no vested right in his or her office.  *State*

---

[3]Notwithstanding the courts' recognition that ouster proceedings should not be commenced in the absences of "a clear case of official dereliction[,]" we have noted:

> However, the ouster statutes also reflect the General Assembly's deep concerns regarding allegations of misconduct by public officials.  They establish special, expedited judicial procedures for the removal of errant officials.  Recognizing the gravity of accusations of misconduct in public officials, these procedures authorize the court hearing the matter to suspend the official pending a final hearing and determination.  Tenn. Code Ann. § 8-47-116. A hearing on a motion to suspend can be held on as little as five (5) days' notice.  Tenn. Code Ann. § 8-47-117. . . .[T]he statutes also limit the number of pleadings allowed and shorten the usual time permitted to answer petitions or complaints.  Tenn. Code Ann. §§ 8-47-114, 8-47-115. Continuances of the trial by agreement of the parties is expressly prohibited. Tenn. Code Ann. § 8-47-119.  Both the trial court and the appellate court are directed to give ouster cases precedence. Tenn. Code Ann. §§ 8-47-119, 8-47-125.  In addition, the legislature has determined that proceedings in ouster actions are to be "summary."  Tenn. Code Ann. § 8-47-119.

*State ex rel. Jones v. Looper*, 86 S.W.3d 189, 198 (Tenn. Ct. App. 2000)(internal footnote omitted).

*v. Blazer*, 619 S.W.2d 370, 374 (Tenn. 1981). Additionally, the General Assembly has the discretion to treat public officers differently from other citizens. *Id.* However, "'it is well settled that an office is a species of property in which [a public official] has property rights.'" *Id*. (quoting *State v. Kerby*, 136 Tenn. 386, 389, 189 S.W. 859 (1916)). Prior to the 2009 amendments to section 7-82-307, district utility commissioners, like other public officials, could be removed from office only upon a showing of knowing or willful misconduct. In light of the foregoing discussion, we must agree with the Commissioners that the statutory amendments providing for the removal of utility district commissioners from office for the failure to fulfill fiduciary duties without a showing of the elements of knowing or willfulness, is a substantive legal change to section 7-81-307(b)(2). Notwithstanding a public official's duty to adhere to his fiduciary responsibilities, retrospective application of the 2009 amendment would attach a new disability to past transactions where it removes the elements of knowing and willfulness. We accordingly reverse summary judgment in favor of the UMRB on this issue.

### *Vagueness*

We next turn to Appellants' assertion that the trial court erred in its determination that the amended statute is not unconstitutionally vague. Appellants' assert that "failing to fulfill the commissioner's or commissioners' fiduciary responsibility in the operation or oversight of the district" is unconstitutionally vague where the terms "fiduciary duty" and "the operation or oversight of the district" contained in the amendments are neither defined nor able to be understood by ordinary persons. They assert that the General Assembly offered no statement of intent or policy, standards or guidelines to enable an administrative law judge to determine what would constitute a breach of fiduciary duty, without an element of knowing or willful failure, in the context of Appellants' operation or oversight of the district. Appellants also assert that an "apparent conflict" exists in the statutes where section 7-82-309(b)(1) provides that "[a]ll powers and authority enumerated in this section shall be exercised by such district for the welfare and benefit of the public served by such district[,]" where section 7-82-309(b)(2)(A) exempts gas utility commissioners from subsection (b), and where section 7-82-307(b)(1) "make[s] the mere failure to fulfill fiduciary duty (without the willful element) grounds for ouster or removal." Appellants also assert that section 7-82-307(b) conflicts with section 48-58-601(b), which provides that "members of . . . non-profit boards must be permitted to operate without concern for the possibility of litigation arising from the discharge of their duties of policy makers" and 48-58-601(c), which immunizes governing bodies of non-profit organizations from suit except in cases of willful, wanton or gross negligence.

The UMRB, on the other hand, contends that the procedural framework contained in the ouster statute "is designed to produce consistent and well-reasoned interpretation and

enforcement of decisions relating to the exercise of utility district commissioners' fiduciary responsibility." It submits that the statute provides that the Comptroller must conduct an investigative audit of a utility district and submit its report to the UMRB, narrowing the conduct that might serve as a ground for removal from office. The UMRB asserts that the Comptroller has prescribed a minimum system of record-keeping for utility districts which is contained in the *Internal Control and Compliance Audit Manual for Tennessee Utility Districts*, and that utility districts always have been subject to annual audits. The UMRB asserts that the provisions of the ouster are consistent with the regulatory scheme governing utility districts. It also asserts that, after the Comptroller has submitted a report, the UMRB must examine it to determine whether a basis exists upon which to initiate a contested case proceeding; that any hearing must be conducted by the UMRB or an administrative law judge; that the matter is subject to further review under section 4-5-315. The UMRB further submits that its members include the Comptroller or his designee; experienced utility district commissioners and managers; and a member representing the interests of utility customers. It argues that the ouster statute is not inconsistent with the exemption for gas utility districts provided by section 7-82-309(b) because the sale and distribution of natural gas is subject to federal regulation. The UMRB finally argues that section 48-58-601 is not relevant to this matter where it pertains to the personal liability of non-profit board members and not to the grounds for removal from office.

We begin our analysis of this issue by noting that an act passed by the General Assembly is presumed to be constitutional. *E.g., Gallaher v. Elam*, 104 S.W.3d 455, 459 (Tenn. 2003)(citations omitted). Thus, the courts must "indulge every presumption and resolve every doubt in favor of the statute's constitutionality." *State v. Taylor*, 70 S.W.3d 717, 721 (Tenn. 2002). We will "uphold the constitutionality of a statute whenever possible." *State v. Robinson*, 29 S.W.3d 476, 480 (Tenn. 2000)(citations omitted). A party challenging the constitutionality of a statute accordingly carries a "heavy burden" to overcome that presumption. *Gallaher*, 104 S.W.3d at 459-60 (quoting *West v. Tenn. Hous. Dev. Agency*, 512 S.W.2d 275, 279 (Tenn. 1974)).

A law regulating a person or entity must provide "fair notice" of the conduct that is required or forbidden, as the case may be. *Moncier v. Bd. of Prof'l Responsibilty*, No. E2012-00340-SC-R3-BP, — S.W.3d —, 2013 WL 2285183, at *9 (Tenn. 2013)(citations omitted). If a law "fails either to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited or to provide sufficient standards for enforcement[,]" then it is void for vagueness. *Id.* "A law is not void for vagueness if an "'ordinary person exercising ordinary common sense'" can sufficiently understand the law and comply with [it.]" *Id.* (quoting *Arnett v. Kennedy*, 416 U.S. 134, 159, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (quoting *Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 578-79, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973))).

In this case, we agree with the UMRB that neither section 7-82-309(b)(2)(A) nor section 48-58-601(b) is inconsistent with section 7-82-307(b). As the UMRB observes, section 48-58-601(b) is applicable to personal liability actions against members of non-profit boards, it is not a statute governing removal from public office. *For the reasons set out in section 7-82-103*, section 7-82-309(b)(2)((B) exempts gas utility districts from subsection (b). Section 7-82-103, moreover, acknowledges that federal law governs the distributing and selling of natural gas.

We also agree with the UMRB that the term"failing to fulfill the commissioner's or commissioners' fiduciary responsibility in the operation or oversight of the district" is not so vague that a person exercising ordinary intelligence and common sense would be unable to understand and comply with it. Appellants acknowledge that public officials have a well-established duty to adhere to their fiduciary duties. We observe, moreover, that the law has long imposed "fiduciary duties," and our statutes and case law are replete with the term. Tennessee Code Annotated § 48-240-102(a), for example, provides that a member of a member-managed LLC has a fiduciary duty to "account to the LLC for any benefit, and hold as trustee for it any profits derived by the member without the consent of the other members from any transaction connected with the formation, conduct, or liquidation of the LLC or from any use by the member of its property . . . ," and section 48-18-601 contains a statute of limitations applicable to actions "alleging breach of fiduciary duties" by corporate officers and directors. Guardians and conservators owe fiduciary duties to their wards, *e.g., Freeman v. Martin*, 181 S.W.2d 745,746 (Tenn. 1944); trustees owe fiduciary duties to trust beneficiaries, *e.g., Blackburn v. Blackburn*, 6 S.W.3d 338 (Tenn. Ct. App. 2001); realtors owe fiduciary duties to their clients, *e.g., Ann Taylor Realtors, Inc. v. Sporup*, No. W2010-00188-COA-R3-CV, 2010 WL 4939967, at *3 (Tenn Ct. App. Dec. 3, 2010); attorneys owe a fiduciary duty to their clients, *e.g., Crawford v. Logan*, 656 S.W.2d 360, 364 (Tenn. 1983); stock brokers and financial advisors providing investment advice also owe fiduciary duties to their clients, *e.g., Johnson v. John Hancock Funds*, 217 S.W.3d 414, 428 (Tenn. Ct. App. 2006); and employees owe a fiduciary duty of loyalty to their employers, *e.g., Efird v. Clinic of Plastic and Reconstructive Surgery*, 147 S.W.3d 208, 219 (Tenn. Ct. App. 2003).

To impose a fiduciary duty is to impose "a duty to act with the highest degree of honesty and loyalty toward another person and in the best interests of the other person[.]" *Black's Law Dictionary* 545 (8th ed. 2004). "Nothing is better settled in equity jurisprudence. It is one of the canons of a court of equity that one who undertakes to act for others cannot in the same matter act for himself. Where confidence is reposed, duties and obligations arise which equity will enforce." *Tisdale v. Tisdale*, 2 Sneed (TN) 596, 1855 WL 2382, at *6 (Tenn. 1855).

Title 7, Chapter 82 of the Tennessee Code contains a comprehensive utility district law. To the extent to which Appellants contend that utility district commissioners, the UMRB, administrative law judges, the trial courts, and this Court will be unable to ascertain the nature and extent of utility district commissioners' fiduciary duties, we must disagree in light of the duties imposed by the chapter. Additionally, utility district commissioners are charged with exercising the powers and authority enumerated in the utility district law set forth in the Code "for the welfare and benefit of the public served by [their] district." Tenn. Code Ann. § 7-82-309(b)(1)(2011). We are confident that utility district commissioners of ordinary intelligence will be able to construe their fiduciary duty – the duty to act with utmost good faith for the benefit of their district and not themselves – when exercising the duties, powers, and authority enumerated in Chapter 82 of Title 7.

### *Holding*

We hold that application of the portion of the June 2009 amendments to Tennessee Code Annotated § 7-82-307(b)(2) permitting the removal of utility district commissioners for failing to fulfill their fiduciary responsibility in the operation or oversight of the district, absent the elements of knowing or wilfulness, is an impermissible retrospective application of law. Summary judgment in favor of the UMRB on that issue accordingly is reversed. We affirm the trial court's determination that the statutory amendment is not unconstitutionally vague. This matter is remanded to the trial court, and the trial court is directed to remand the case to the Board for further proceedings consistent with our opinion. Costs on appeal are taxed one-half to the Appellee, the Utility Management Review Board, and one-half to Appellants, Charles Taylor, Charles Oldham, and Jerry Shattuck.

_____

DAVID R. FARMER, JUDGE

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

# THE COMMISSIONERS OF THE POWELL-CLINCH UTILITY DISTRICT v. UTILITY MANAGEMENT REVIEW BOARD

**Chancery Court for Davidson County**
**No. 111608-IV**

---

**No. M2012-01806-COA-R3-CV**

---

**ORDER**

The Judgment of this Court filed in this matter on May 24, 2013, is hereby withdrawn. **It is SO ORDERED**.

**PER CURIAM**