IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 13, 2021 Session

## NASHVILLE TENNESSEE VENTURES, INC. v. NORMA ELIZABETH MCGILL

**Appeal from the Circuit Court for Davidson County**
No. 20C613      Thomas W. Brothers, Judge

_____

### No. M2020-01111-COA-R3-CV

_____

Appellant, a Tennessee corporation in the timeshare exit business, brought suit against Appellee, a former employee, for breach of contract, breach of the duty of loyalty, and civil conspiracy. Appellant alleged that during Appellee's employment, she conspired with a competing company to steal business from Appellant. Appellee filed a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss, and the trial court dismissed the complaint in full with prejudice because the alleged employment contract, attached as an exhibit to the plaintiff's complaint, did not name the plaintiff as a party to the contract. We affirm the trial court's dismissal of the breach of contract claim but reverse the dismissal of the breach of the duty of loyalty claim and the civil conspiracy claim.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part, Reversed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Christopher J. Barrett and Mark A. Baugh, Nashville, Tennessee, for the appellant, Nashville Tennessee Ventures, Inc.

Chad M. Jackson, Nashville, Tennessee, for the appellee, Norma Elizabeth McGill.

### OPINION

### I. Background

Appellant Nashville Tennessee Ventures, Inc. d/b/a Help 4 Timeshare Owners ("Ventures") is a Tennessee corporation that provides services in the timeshare exit

business. Ventures' business model includes two services: (1) a sales room in which team members sell Ventures' services to prospective clients; and (2) a fulfillment department in which "Case Managers" work directly with clients who are seeking relief from unwanted timeshares. Case Managers in the fulfillment department are supervised by the Executive Branch Director, a position that the complaint alleges was held by Appellee Norma Elizabeth McGill under contract.

On March 11, 2020, Ventures filed suit against Ms. McGill in the Davidson County Circuit Court ("trial court"), alleging breach of contract, breach of the duty of loyalty, and civil conspiracy. The crux of Ventures' lawsuit concerned Ms. McGill's alleged dealings with a Texas company, Lonestar Transfer, LLC ("Lonestar"). Lonestar, a competitor of Ventures, also provides services in the timeshare exit business. However, unlike Ventures, Lonestar did not have a fulfillment department and engaged Ventures to perform fulfillment services for its clients. Ventures alleged that Ms. McGill conspired with Lonestar's owners, Karen and Richard Holloway, to "decimate" Ventures' fulfillment department. According to the complaint, Ms. McGill identified employees of Ventures' fulfillment department, notified these individuals that they were being "laid off" by Ventures, and then recommended that Lonestar hire them. Although Ms. McGill's last day of employment with Ventures was December 13, 2018, the complaint alleged that she began working for Lonestar on December 3, 2018, in contravention of her contractual obligations.

In its complaint, Ventures' alleged three causes of action against Ms. McGill. First, Ventures claims that Ms. McGill breached her employment contract. Ventures attached to its complaint a document titled "Offer of Employment and Independent Contractor Contract" (the "Agreement"). The complaint states that, "On May 15, 2015, [Appellee] McGill signed [the Agreement]," and "[Appellee] McGill was thereafter employed by [Ventures]." As discussed in further detail below, the Agreement is made by and between "Beth McGill" and an entity identified as "Helping Timeshare Owners, LLC." There is no indication in the record as to whether, or how, "Helping Timeshare Owners, LLC" and Ventures are related.

In addition to the breach of contract claim, Ventures also asserted that Ms. McGill breached the duty of loyalty she owed to Ventures as its Executive Branch Director. Specifically, Ventures averred that

> [b]y informing Mr. and Mrs. Holloway that if they stopped sending money and new files to Plaintiff, Plaintiff would likely go out of business, Defendant McGill failed to act in the best interests of Plaintiff. Indeed, this statement directly caused Plaintiff to lose a key business partner and thereby suffer significant financial losses. Defendant McGill thereby engaged in conduct that was adverse to Plaintiff's interests and breached the duty of loyalty she owed to Plaintiff. Defendant McGill also proceeded to terminate Plaintiff's

- 2 -

employees without authority and facilitated their employment with Lonestar to compete with Plaintiff and its business pursuits.

In its final claim for relief, Ventures alleged that Ms. McGill engaged in a civil conspiracy with the Holloways in that "McGill and Mr. and Mrs. Holloway were all aware of each other's individual intentions to decimate [Appellant's] fulfillment department and set up a competing business with employees of [Appellant] and were also aware of [] McGill's intent to accomplish this purpose by breaching her duty of loyalty to [Appellant]."

On April 23, 2020, Ms. McGill filed a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss the complaint for failure to state a claim on which relief could be granted. As grounds, Ms. McGill noted the discrepancy in the Agreement, i.e., that the Agreement was made in the name of "Helping Timeshare Owners, LLC" (without indication of how or whether the entity was related to Ventures). Ms. McGill further asserted that Ventures failed to establish that she was its employee so as to give rise to a duty of loyalty. Because each of Ventures' causes of action rested on the existence of a valid and enforceable contract and the existence of an employee/employer relationship between Ventures and Ms. McGill, Ms. McGill asserted that the complaint failed to state any claim for relief.

Following a hearing, on May 8, 2020, the trial court granted Ms. McGill's motion by order of June 5, 2020, wherein it dismissed Ventures' complaint in full with prejudice. In its order, the trial court disposed of Ventures' breach of contract claim by noting that there were no allegations showing any relationship between Ventures and the entity identified in the Agreement, i.e., "Helping Timeshare Owners, LLC." As to Ventures' claim for breach of the duty of loyalty, the trial court held that Ventures "has not alleged a stand-alone breach of the duty of loyalty claim." Finally, as to Ventures' civil conspiracy claim, the trial court held that Ventures failed to alleged an underlying act because its claims for breach of contract and breach of the duty of loyalty failed.

On June 5, 2020, Ventures filed a motion to alter or amend the judgment, asking the trial court to allow the breach of the duty of loyalty and civil conspiracy claims to go forward as independent from the breach of contract claim. On June 12, 2020, Ms. McGill filed a motion in opposition to the motion to alter or amend. Following a hearing, the trial court denied the motion to alter or amend by order of August 11, 2020. Ventures appeals.

## II. Issues

Ventures raises two issues for review, which we restate as follows:

1. Whether the trial court erred in granting Ms. McGill's Rule 12.02(6) motion, dismissing all of Ventures' causes of action.
2. Whether the trial court erred in denying Ventures' motion to alter or amend judgment.

- 3 -

## III. Standard of Review

A Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss tests "the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." ***Story v. Bunstine***, 538 S.W.3d 455, 463 (Tenn. 2017) (citation and quotation marks omitted). Therefore, the resolution of a Rule 12.02(6) motion is determined by an examination of the pleadings alone. ***West v. Schofield***, 468 S.W.3d 482, 489 (Tenn. 2015). A defendant who files a motion to dismiss admits the truth of all of the relevant and material allegations contained in the complaint, but asserts that those allegations do not establish a cause of action as a matter of law. ***Story***, 538 S.W.3d at 463. A trial court should grant a motion to dismiss only when "it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." ***Phillips v. Montgomery County***, 442 S.W.3d 233, 237 (Tenn. 2014) (citation and quotation marks omitted).

In reviewing the trial court's disposition of a Rule 12.02(6) motion to dismiss, an appellate court must "construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." ***Trau-Med of Am., Inc. v. Allstate Ins. Co.***, 71 S.W.3d 691, 696 (Tenn. 2002). Our review of the trial court's legal conclusions regarding the adequacy of the complaint is *de novo* with no presumption that the trial court's decision was correct. ***Id.*** at 696-97. With the foregoing in mind, we turn to review the trial court's dismissal of each of the causes of action alleged in Ventures' complaint.

## IV. Analysis

### A. Breach of Contract

To establish a claim for breach of contract, a plaintiff must plead facts that, if true, would support each of these elements: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." ***ARC Lifemed, Inc. v. AMC-Tenn., Inc.***, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (quoting ***Custom Built Homes v. G.S. Hinsen Co., Inc.***, No. 01A01-9511-CV-00513, 1998 WL 960287, at *3 (Tenn. Ct. App. Feb. 2, 1998)).

Concerning the first *prima facie* element, i.e., the existence of an enforceable contract, in its complaint, Ventures avers that, "The Agreement constitutes a binding and enforceable contract between [Ventures] and [Appellee] McGill." The problem, as noted above, is that there is no agreement between Ventures and Ms. McGill because the Agreement was entered by "Helping Timeshare Owners, LLC," not Ventures. Furthermore, there is nothing in the record to indicate any relationship between "Helping Timeshare Owners, LLC" and Ventures. Moreover, the Agreement does not contain the signature of any agent of Ventures. Nonetheless, in its brief, Ventures argues that the trial court erred in dismissing its breach of contract claim because

- 4 -

[a]s [Ventures] argued on page three of its Response to [Ms. McGill's] Motion to Dismiss, even despite the Contract listing "Helping Timeshare Owners, LLC" as a party to the Contract rather than [Ventures], "[t]here are several different legal arguments available to [Ventures] to demonstrate that [Ms. McGill] remained bound by the Agreement throughout her employment with [Ventures]." In support of this argument, [Ventures] cited to this Court's opinion in *Dominion Enterprises v. Dataium, LLC*, No. M2012-02385-COA-R3[-]CV, 2013 WL 6858266 (Tenn. Ct. App. Dec. 27, 2013) (no appeal taken) as an example of a case in which a court permitted enforcement of an agreement by an entity that was not actually named in the agreement.[1]

In addition to its misplaced reliance on *Dominion*, Ventures makes only one additional argument in its brief concerning the enforceability of the Agreement—reformation of the contract. Ventures notes that the Agreement contains a choice of law provision stating that Florida law governs any disputes,[2] and "both Tennessee and Florida law permit reformation of a contract where, due to a mutual mistake, the contract does not accurately express the true intention or agreement of the parties."

A mutual mistake is "a mistake of all the parties [of a contract] laboring under the same misconception." *Trent v. Mountain Commerce Bank*, 606 S.W.3d 258, 263 (Tenn. 2020) (citation and quotation marks omitted). A court may reform a contract when, due to a mutual mistake, the instrument does not accurately express the parties' agreement. *Id*. However, Ventures cites no authority in support of its proposition that the misidentification of a party constitutes a "mutual mistake" for which reformation of a contract is an appropriate remedy. It is simply implausible that Ventures was laboring under a

---

[1] Although Ventures cites *Dominion*, we note that, in its response to Ms. McGill's motion to dismiss, Ventures did not develop any argument around the *Dominion* case. In fact, this paragraph constitutes the whole of Ventures' "argument" in its appellate brief. As we have stated, "It is not the function of this Court to . . . research and construct the party's argument." *Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009) (citing *Bean v. Bean*, 40 S.W.3d 52, 56 (Tenn. Ct. App. 2000)). To the extent that Ventures' statement that "*Dominion* . . . [is] an example . . . in which a court permitted enforcement of an agreement by an entity that was not actually named in the agreement" might be viewed as an argument, we note that that *Dominion* is readily distinguishable from the case at bar. In *Dominion*, the contract at issue was between former employees and a subsidiary of the plaintiff company. 2013 WL 6858266, at *1. As noted above, from the record there is no indication that Ventures and Helping Timeshare Owners, LLC were related, much less that there is a parent-subsidiary connection between the entities.

[2] The provision states:

**Governing Law.** This Agreement shall be governed and interpreted in accordance with the laws of the State of Florida; as such laws are applied to agreements between residents of Florida to be performed entirely within the State of Florida.

misconception as to its own identity.  Furthermore, when Ms. McGill filed her motion to dismiss the complaint, Ventures was on notice of the discrepancy between the name of the party to the Agreement and the party to the lawsuit, yet Ventures failed to move to amend its complaint to either explain the discrepancy, or to establish a relationship between "Helping Timeshare Owners, LLC" and Ventures.[3]   In short, neither the Agreement nor Ventures' complaint demonstrates the existence of an enforceable contract between Ventures and Ms. McGill.  Because the purported contract itself negates an essential element of Ventures' claim, i.e., the existence of an enforceable contract **between the parties**, the trial court did not err in dismissing Ventures' breach of contract claim. *See **Humphries v. W. End Terrace, Inc.***, No. 01-A-019102CH00047, 1991 WL 244468, at \*2 (Tenn. Ct. App. Nov. 22, 1991) (finding that the trial court properly dismissed a fraud claim when exhibits to the plaintiff's complaint negated actionable fraud as a matter of law).

### B. Breach of the Duty of Loyalty

Ventures argues that the trial court erred in dismissing its breach of loyalty claim because it adequately pled that Ms. McGill was Ventures' employee, and that she owed Ventures a duty of loyalty, an obligation that is distinct from any contractual obligation between the parties.  Ms. McGill counters that the duty of loyalty claim necessarily fails because it is based on the breach of contract claim and that, in its complaint, Ventures "does not otherwise allege an employment or independent contractor relationship" between the parties.

In Tennessee, "employees owe a fiduciary duty of loyalty to their employers." ***Comm'rs of Powell-Clinch Util. Dist. v. Util. Mgmt. Review Bd.***, 427 S.W.3d 375, 389 (Tenn. Ct. App. 2013).  Both at-will and contract employees owe this duty, ***Ram Tool & Supply Co., Inc. v. HD Supply Constr. Supply Ltd.***, No. M2013-02264-COA-R3-CV, 2016 WL 4008718, at \*5 (Tenn. Ct. App. July 21, 2016), and thus, Ventures' failure to allege facts that would show a viable employment agreement existed (so as to support its breach of contract claim) does not automatically prevent it from asserting this distinct cause of action.  The duty of loyalty requires the employee to "act solely for the benefit of the employer in matters within the scope of his employment [and to refrain from] engag[ing] in conduct that is adverse to the employer's interests." ***Knott's Wholesale Foods, Inc. v. Azbell***, No. 01A-01-9510-CH-00459, 1996 WL 697943, at \*3 (Tenn. Ct. App. Dec. 6, 1996).  "An employee who solicits his or her coworkers to leave their jobs to work for a competitor while the soliciting employee is still being paid by the employer is in violation of his or her fiduciary duty and duty of loyalty." ***Ram Tool,*** 2016 WL 4008718, at \*5.

---

[3] Notably, after filing its initial Complaint under the name "Tennessee Ventures, Inc. d/b/a Help 4 Timeshare Owners," Ventures filed an Order of Substitution, entered on March 25, 2020, to correct its name to "Nashville Tennessee Ventures, Inc. d/b/a Help 4 Timeshare Owners," but without any reference to, or explanation concerning "Helping Timeshare Owners, LLC," the entity listed on the Agreement.

To make out a claim for breach of a fiduciary duty, a plaintiff must plead facts that, if true, would establish each of these elements: "(1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury to the plaintiff or benefit to the defendant as a result of that breach." *Ann Taylor Realtors, Inc. v. John N. Sporup, et al.*, No. W2010-00188-COA-R3-CV, 2010 WL 4939967 at *3 (Tenn. Ct. App. Dec. 3, 2010). Therefore, if Ventures alleged facts in its complaint that would establish that Ms. McGill was Ventures' employee, then the pleading requirement for the first element is satisfied. In its complaint, Ventures alleged, in part, that:

10. [Ms.] McGill was thereafter employed by [Appellant] and worked at [Appellant's] 503A Ligon Drive, Nashville, Tennessee, 37204 location.

11. [Ms.] McGill was promoted during the course of her employment with [Appellant] and in the fall of 2018, worked for [Appellant] as the Executive Branch Director.

12. In this role, [Ms.] McGill supervised the Case Managers in the performance of their duties in [Appellant's] fulfillment department.

13. [Ms.] McGill also had the responsibility of hiring new Case Managers.

. . .

49. As the Executive Branch Director, [Ms.] McGill owed a duty of loyalty to [Appellant].

Thus, contrary to Ms. McGill's argument that "Ventures' Complaint does not [except through the purported contract] allege an employment or independent contractor relationship between Ms. McGill and Tennessee Ventures," paragraph 10 of the complaint specifically alleges an employment relationship.[4]

---

[4] Ms. McGill assigns special significance to Ventures' use of the word *thereafter* in the complaint:

Further, after attaching the purported Contract to its Complaint, alleging that Ms. McGill signed the purported Contract, and citing language of the purported Contract [in paragraph 9, reproduced *supra*], Tennessee Ventures alleged *in the next paragraph* [paragraph 10, reproduced *supra*] that Ms. McGill was "thereafter"—a clear modifier in reference to the preceding paragraphs—employed by Plaintiff. Thus, Numerical paragraph 10 asserts that the basis for Ms. McGill's alleged employment with Tennessee Ventures was founded in the purported "Helping Timeshare Owners, LLC" Contract.

. . .

Ventures' use of the modifier "thereafter" demonstrates further reliance by Tennessee Ventures on the purported Contract that does not even mention Tennessee Ventures.

(Emphasis in original.) Contrary to Ms. McGill's assertion, *thereafter* does not indicate a causal relationship, but rather a temporal one. *Thereafter* merely means "afterward" or "later." Thereafter, *Black's*

- 7 -

Ms. McGill points to paragraph 48 of the complaint (which states, "[Appellant] realleges and incorporates by reference the allegations contained in paragraphs 1–47") and argues that "because Tennessee Ventures realleged and incorporated those paragraphs into its claims for . . . breach of the duty of loyalty[] and . . . civil conspiracy, it necessarily made the basis of those claims reliant on the 'Helping Timeshare Owners, LLC' Contract[,]" which is "fatal to each alleged cause of action." Ms. McGill cites no authority for this argument, and our research has yielded none. To the contrary, the Rules of Civil Procedure permit a party to state as many claims as he has, "regardless of consistency." Tenn. R. Civ. P. 8.05. Regardless of whether Ms. McGill and Ventures entered into an enforceable contract, Ventures directly alleged that Ms. McGill was its employee, thus satisfying the pleading requirement for the first element of its breach of a fiduciary duty claim.

Further, Ventures satisfies the requirement to plead facts that would support the remaining elements of the cause of action by asserting specific actions by Ms. McGill that, if true, show that she breached the fiduciary duty of loyalty she owed to Ventures as her employer and that the breach caused damages to Ventures. It its complaint, Venture alleges, *inter alia*:

> 37. [Ms.] McGill resigned from her employment with [Appellant] and her last day of work with [Appellant] was on December 13, 2018.
>
> 38. However, [Ms.] McGill began working as an employee of Lonestar on December 3, 2018.
>                                             . . .
> 51. By informing Mr. and Mrs. Holloway that if they stopped sending money and new files to [Appellant], [Appellant] would likely go out of business, [Ms.] McGill failed to act in the best interests of [Appellant]. Indeed, this statement directly caused [Appellant] to lose a key business partner and thereby suffer significant financial losses. [Ms.] McGill thereby engaged in conduct that was adverse to [Appellant's] interests and breached the duty of loyalty she owed to [Appellant]. [Ms.] McGill also proceeded to terminate [Appellant's] employees without authority and facilitated their employment with Lonestar to compete with [Appellant] and its business pursuits.
>                                             ***
>
> 53. [Appellant] has been damaged by losing Lonestar's business and suffering reputational harm among other damages.

---

*Law Dictionary* (11th ed. 2019). Thus, paragraph 10 does not demand that the purported contract govern the employment relationship; it merely states that there was an employment relationship between Ventures and Ms. McGill afterward.

Presuming all factual allegations in the complaint to be true and giving Ventures the benefit of all reasonable inferences as required when reviewing a Rule 12.02(06) dismissal, we conclude that Ventures has pled sufficient facts to show that Ms. McGill breached a duty of loyalty by failing to act solely for the benefit of her employer and by engaging in conduct adverse to her employer's interests. By alleging that she began working for Lonestar before the end of her employment by Ventures and therefore impermissibly competed against her employer during the employment relationship, **Ram Tool & Supply**, 2016 WL 4008718, at \*5, Ventures did state a claim against Ms. McGill for breach of loyalty. Accordingly, we reverse the trial court's dismissal of the claim for breach of duty of loyalty.

### C. Civil Conspiracy

To survive a Rule 12.02(6) motion to dismiss a civil conspiracy claim, a plaintiff must allege facts in his complaint to support these elements: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." **Kincaid v. SouthTrust Bank**, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). Pertinent to these elements, Ventures stated in its complaint:

> 55. [Ms.] McGill intended to decimate [Appellant's] fulfillment department by breaching the duty of loyalty she owed to [Appellant].

> 56. To that end, [Ms.] McGill informed Mr. and Mrs. Holloway that if they stopped sending money and new files to [Appellant], [Appellant] would likely go out of business. [Ms.] McGill carried out a plan to set up a business to compete with [Appellant] using [Appellant's] own employees.

> 57. Mr. and Mrs. Holloway also intended to decimate [Appellant's] fulfillment department.

> 58. [Ms.] McGill and Mr. and Mrs. Holloway were all aware of each other's individual intentions to decimate [Appellant's] fulfillment department and set up a competing business with employees of [Appellant] and were also aware of [Ms.] McGill's intent to accomplish this purpose by breaching her duty of loyalty to [Appellant].

These assertions and those previously quoted in this opinion allege a common design between Ms. McGill and the Holloways to damage Ventures' business; unlawful means to accomplish the design, i.e., breach of the duty of loyalty; acts in furtherance of the conspiracy, e.g., informing selected Ventures employees that they were laid off in order for Lonestar to hire them; and injury to Ventures, including lost business and damage to its

- 9 -

reputation. Therefore, we conclude that Ventures alleged sufficient facts in its complaint to state a claim for civil conspiracy. Ms. McGill argues that dismissal was proper because Ventures' underlying claims were dismissed.[5] However, because we reverse the dismissal of the breach of the duty of loyalty claim, we also reverse the trial court's grant of Ms. McGill's motion to dismiss with respect to Ventures' civil conspiracy claim against her.

## V. Denial of Ventures' Motion to Alter or Amend

Ventures argues that the trial court abused its discretion in denying its motion to alter or amend the judgment, which asked that the court "alter its Order . . . to allow [Appellant's] breach of the duty of loyalty and civil conspiracy claims to proceed against [Ms. McGill]." Because the breach of the duty of loyalty claim does not depend on the existence of an employment contract, it is a stand-alone claim, and, thus, may proceed even in light of our affirmation of the dismissal of the breach of contract claim. Therefore, our resolution of the issues in this case pretermits our need to address the court's ruling on the motion to alter or amend.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's dismissal of Appellant's claim for breach of contract. We reverse the trial court's dismissal of Appellant's claims for breach of the duty of loyalty and civil conspiracy, and remand the case for such further proceedings as may be necessary and are consistent with the opinion. Costs of the appeal are assessed one-half to the Appellant, Nashville Tennessee Ventures, Inc. d/b/a Help 4 Timeshare Owners, and one-half to the Appellee, Norma Elizabeth McGill, for all of which execution may issue if necessary.

_____s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE

---

[5] "[T]here is no liability under a theory of civil conspiracy unless there is underlying wrongful conduct." *Levy v. Franks*, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004).