IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 29, 2022 Session

## THE ESTATE OF CLINT WALLACE v. NEWREZ LLC

**Appeal from the Chancery Court for Dyer County**
**No. 18-PR-45          Jason L. Hudson, Judge**
_____

### No. W2021-00599-COA-R3-CV
_____

This appeal arises from the trial court's decision to allow expenses and claims against an insolvent estate to have priority over a recorded deed of trust to the proceeds of the court-ordered sale of the decedent's encumbered real property. We hold that the statutes governing the administration of insolvent estates do not affect amounts due under a perfected deed of trust. Accordingly, proceeds from the sale of decedent's real property must first be used to satisfy the deed of trust. Any remaining surplus is available for distribution in accordance with Tennessee Code Annotated section 30-2-317. The judgment of the probate court is reversed, and this matter is remanded for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and CARMA DENNIS MCGEE, JJ., joined.

Bret J. Chaness and Patricia Whitehead, Peachtree Corners, Georgia, for the appellant, NewRez, LLC.

Charles V. Moore, Jr. and Richard J. Schoepke, Dyersburg, Tennessee, for the appellee, Estate of Clint Wallace.

### OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

This appeal arises from the probate of an intestate decedent's insolvent estate. It

requires us to determine whether, when real property encumbered by a deed of trust perfected during the decedent's lifetime is sold to satisfy claims against the estate, amounts due under the deed of trust must be paid before any surplus becomes available for distribution in accordance with Tennessee Code Annotated section 30-2-317. The facts relevant to our disposition of the issues raised for our review are not disputed.

On December 14, 2015, real property located at 2600 Peach Grove Lane in Woodlawn (Montgomery County), Tennessee ("the Property"), was conveyed to Clint Allan Wallace ("Mr. Wallace") by quitclaim deed. On the same day, Mr. Wallace obtained a loan from Flagship Financial Group, LLC ("Flagship") in the amount of $143,750.00 ("the loan"). Mr. Wallace executed a promissory note to Flagship and a Deed of Trust in favor of Mortgage Electronic Registration System, Inc. ("MERS") as nominee for Flagship. The note and Deed of Trust were secured by the Property.[1] Appellant NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("NewRez") is the current holder of the note and Deed of Trust.[2]

In August 2018, Mr. Wallace died in an automobile accident at age 37. He died intestate, leaving behind two minor children as his heirs. Mr. Wallace resided in Dyer County at the time of his death, and his only significant assets were the Property and a truck that was totaled in the accident. The truck was subject to a perfected security interest in the amount of $27,400.68 in favor of Bridgecrest, obo GFC Lending, LLC ("Bridgecrest") and was insured with Farmers Insurance.

Mr. Wallace's estate ("the Estate") was opened in the Probate Division of the Chancery Court for Dyer County on August 13, 2018. Mr. Wallace's mother, Patty Harris ("Ms. Harris"), was appointed Administrator of the Estate. A notice to creditors was published on August 21, and several claims were filed against the Estate. In October 2018, Ms. Harris filed a petition for specific property, a year's support allowance, and a homestead allowance of $5,000.00 in cash for Mr. Wallace's minor children. In December 2018, Ms. Harris filed an inventory listing a checking account containing $1,349.83, a pending insurance claim on Mr. Wallace's truck in the amount of $23,827.99, and the Property valued at $147,900.00 as the only assets of the Estate.

In January 2019, the outstanding principal due under the Deed of Trust was approximately $135,000.00. It appears from the record transmitted to this Court that counsel for the Estate contacted NewRez on January 16, 2019, and that NewRez agreed that the Property would be listed for sale. On January 23, Rubin Lublin TN, PLLC ("Rubin Lublin") counsel for Shellpoint Mortgage, notified the Estate that it intended to foreclose

---

[1] See ***Mortg. Elec. Registration Sys., Inc. v. Ditto***, 488 S.W.3d 265 (Tenn. 2015) for a discussion of the role of MERS in mortgage securitization in the contemporary residential mortgage industry.

[2] It appears that NewRez acquired Shellpoint Mortgage Servicing (Shellpoint Partners LLC) at some point in 2018. See www.newrez.com/press-news/new-residential-completes-previously-announced-acquisition-of-shellpoint-partners.

on the Property and that sale by public auction would be held on March 14, 2019. It appears that attempts by the Estate's counsel to contact Rubin Lublin by telephone were unsuccessful, and on February 13 counsel for the Estate advised Rubin Lublin by certified mail, return receipt requested, that the Estate disputed the validity of the debt and that any attempt to foreclose on the Property would be in violation of the Fair Debt Practices Act.[3] Rubin Lublin replied in writing on February 26, enclosing a copy of the loan payment history and advising counsel that it had initiated foreclosure proceedings.

In the meantime, on February 19, 2019, the Estate filed a petition in the probate court to list the Property for sale. In its petition, the Estate asserted that it lacked sufficient funds to pay Mr. Wallace's debts and the Estate's administration expenses. It further asserted that the Property was valued at $147,900.00 and that, subject to the court's approval, it had retained a realtor to sell the Property subject to a six percent commission. The probate court granted the petition the same day.

On March 5, 2019, the Estate filed a suggestion of insolvency. The Estate asserted the value of the personal estate was $25,179.22; that the claims against and expenses of the Estate totaled $167,291.85; and that the assets of the Estate were insufficient to pay the debts and administrative expense. The Estate asserted that the probate court accordingly had jurisdiction over the Property under Tennessee Code Annotated section 30-2-418.

In its suggestion of insolvency, the Estate also asserted that Rubin Lublin was in violation of the Fair Debt Collection Practices Act ("FDCPA") and prayed for a temporary restraining order and an injunction. The Estate submitted that Rubin Lublin had published notices of foreclosure of the Property in violation of the FDCPA and that the foreclosure sale scheduled for March 14 would "usurp the jurisdiction of [the] [c]ourt and misappropriate decedent's assets in favor of NewRez at the expense of the decedent's creditors and beneficiaries and in violation of Tennessee Law." The Estate prayed for a temporary restraining order and, "eventually," an injunction against Rubin Lublin and NewRez restraining them from taking any action to foreclose against the Property. The probate court granted a temporary restraining order enjoining Rubin Lublin and NewRez from taking any action to foreclose or otherwise proceed against the Property on March 5. Following a hearing on March 20, the probate court assumed jurisdiction over the property pursuant to Tennessee Code Annotated section 30-2-418 and granted the Estate's petition for a temporary injunction enjoining Rubin Lublin and NewRez from proceeding against the Property.

Rubin Lublin filed a notice of removal to the United States District Court for the Western District of Tennessee on April 4, 2019. In its notice in the probate court, Rubin

---

[3] The record contains a sworn affidavit of counsel for the Estate attesting to his conversation with a representative of NewRez, his efforts to list the property for sale in reliance on an agreement with NewRez, and his unsuccessful efforts to contact Rubin Lublin by telephone.

Lublin advised the court that, "[p]ursuant to 28 U.S.C. § 1446(d), this 'court shall proceed no further unless and until the case is remanded.'" In the district court, Rubin Lublin asserted federal jurisdiction was proper over the Estate's claim that Rubin Lublin had acted in contravention of the FDCPA. It also asserted that the federal court had supplemental jurisdiction over the Estate's claim of misappropriation of assets because the claim was "derived from the same common nucleus of fact as the FDCPA claim."

On April 11, Rubin Lublin filed a motion to dismiss the Estate's FDCPA claim for failure to state a claim on the basis that 1) it is not a debt collector and 2) the Estate had failed to allege how it had violated the FDCPA. It also filed a motion to sever and remand issues relating to the Estate's notice of insolvency and "claim" of misappropriation of property. The Estate did not respond to Rubin Lublin's motions, and the district court determined that the Estate's petition "allege[d] no facts to show that Rubin Lublin meets the FDCPA's primary definition of a 'debt collector' or could be held liable under any section of the Act other than section 1692f(6)." The court determined that the Estate had failed to state a claim with respect to the FDCPA and granted Rubin Lublin's motion to dismiss. The court found that Rubin Lublin "concede[d] that 'the determination of Estate insolvency and how the insolvent Estate is to be administered do not share 'a common nucleus of operative fact' with the determination of whether or not the notices of foreclosure published by Rubin Lublin violated the FDCPA."

The district court concluded that it had original jurisdiction over the FDCPA claims but lacked supplemental jurisdiction over the rest of the Estate's petition. It accordingly granted Rubin Lublin's motion to sever and remand. The district court entered judgment on July 19, 2019, and the matter was remanded to the probate court.[4]

On August 16, 2019, the Estate filed a motion to approve the sale of the Property. In its motion, the Estate asserted that it had retained a realtor and had entered into a standard contract for sale, subject to the court's approval, for a price of $162,000.00.[5] The probate court approved the sale by order entered August 28. However, it appears the buyers were unable to obtain financing, and the sale fell through in May 2020.[6]

In June 2020, the Estate filed a motion to approve judicial sale of the Property, and the probate court granted the motion on September 1, 2020. The probate court appointed a special commissioner to complete the sale and ordered:

> Upon the Special Commissioner's receipt of the net purchase price, any and
> all liens or claims against Decedent or Decedent's property, including the

---

[4] It appears that NewRez had retained Rubin Lublin for the foreclosure and that Rubin Lublin did not represent NewRez following remand to state court.

[5] The record before us contains a sales contract dated May 29, 2019.

[6] The Estate contends that Buyers were unable to secure financing because NewRez failed to consent to the sale.

- 4 -

mortgage and/or deed of trust held by NewRez, LLC, and any other mortgages or deeds of trust secured by the Property, and any other claims, whether choate or inchoate, are transferred from the Property to the proceeds of sale[.]

The Property was sold at public sale on October 12, 2020, at a sales price of $167,000. The principal due under the Deed of Trust was approximately $135,405.97 at the time of sale, and the total amount due on the loan was $151,455.85. The Special Commissioner filed his report on October 26, 2020, and determined:

There is a deed of trust recorded in ORBV 1653, Page 1056, Register's Office for Montgomery County, Tennessee (ROMCT) held by New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing, with Rubin Lublin TN, PLLC, as trustee pursuant to an Appointment of Substitute Trustee recorded in ORBV 1857, Page 2749, ROMCT. The estimated payoff for this encumbrance through November 30, 2020, is One Hundred Fifty-One Thousand Four Hundred Fifty-Five Dollars and Eighty-Five Cents ($151,455.85). This amount is subject to change based upon the consummation of the transaction and date in which funds are received and disbursed.

The Special Commissioner estimated total disbursements in the amount of $157,603.56, including costs of the sale, 2020 Montgomery County taxes, the Special Commissioner's fee of three percent ($5,010.00), and payment to NewRez/Shellpoint Mortgage Servicing in the amount of $151,455.85. Thus, a surplus of $9,396.44 remained to be deposited in the registry of the court.

Following a hearing on October 27, the probate court entered an "order amending and confirming [the] special commissioner's report of sale and vesting title[.]" In its order, the probate court found that the Property was "subject to an apparent perfected security interest in the form of a mortgage and/or deed of trust held in favor of NewRez, LLC, as set forth with particularity in the Notice of Insolvency[.]" The probate court ordered the Property divested from the Estate and vested in the purchaser and ordered "any and all liens or claims against Decedent or Decedent's Property, whether choate or inchoate, including but not limited to the aforesaid mortgage and/or deed of trust held in favor of NewRez, LLC, should be terminated and transferred from the Property to the proceeds of sale therefrom." The probate court struck the Special Commissioner's assignment of $151,445.85 to NewRez, reduced the total disbursements to $6,147.71, and ordered net proceeds in the amount of $159,633.28 tendered to the clerk and master.

The Estate filed a notice of insolvency on November 12, 2020. In its notice, the Estate stated that the principal balance due on the note and Deed of Trust was $134,437.16, that post-death interest, fees and expenses totaled $17,167.47, and that the total outstanding

balance was $151,604.63. It also stated that the assets of the Estate, including $159,633.28 in net proceeds from sale of the Property, amounts received from the settlement with Farmers Insurance, and the balance of Mr. Wallace's checking account totaled $184,812.50. In its plan of distribution, the Estate allocated $4,689.94 to each of Mr. Wallace's two children; $43,882.17 to Estate's attorneys; and $4,500.00 to Ms. Harris as personal representative. It also allocated $22,003.43 to Bridgecrest and $105,047.02 to NewRez as pro rata shares of the remaining net estate.

On December 22, 2020, NewRez filed an objection to the Estate's notice of insolvency. In its objection, NewRez did not contend that the Estate was not insolvent. Rather, NewRez asserted that it held a first-priority secured lien on the Property by way of a recorded Deed of Trust and that it "maintain[ed] its first-priority secured lien to the sales proceeds." NewRez observed that the Estate had admitted in its notice of insolvency that the Deed of Trust was secured by the Property and that there was $151,604.63 due and owing, including $134,437.16 in principal. NewRez objected to the Estate's planned distribution of the proceeds from the sale of the Property and submitted:

> Since NewRez held a first-priority secured lien on the Property, after the sale, NewRez['s] first-priority lien attached to the sale proceeds pursuant to this [c]ourt's order of September 1, 2020, ¶ G. 7.
>
> As there are sufficient proceeds from the Sale of the Property to pay the Deed of Trust in full, and NewRez hold[s] a first-priority lien to the proceeds from the Sale, this [c]ourt should disburse payment of $152,367.79, plus a per diem of $12.99, to NewRez to satisfy the indebtedness secured by the Deed of Trust.

The probate court heard the matter on April 20, 2021. By ordered entered May 11, 2021, the probate court determined that the total amount due and owing to NewRez was $156,278.43, the amount asserted by NewRez at the hearing.[7] The court determined that the gross value of the Estate totaled $184,812.50; that funds in the amount of $4,706.08 were exempt from creditor claims; and that the secured claims of NewRez and Bridgecrest totaled $183,679.11. It also found that $47,010.17 remained due for attorney's fees and expenses. The court determined that Mr. Wallace's two minor children/heirs were entitled to a disbursement of exempt property in the amount of $2,353.04 each. The court further determined that, under Tennessee Code Annotated section 30-2-317(a), counsel for the Estate was entitled to reimbursement in the amount of $47,010.17 and Ms. Harris was entitled to a personal representative fee in the amount of $4,500.00. The court classified NewRez and Bridgecrest as non-priority secured creditors under section 30-2-317(c), subject to a pro rata distribution of the remaining assets as provided by section 30-2-317(b).

---

[7] At oral argument of this matter on June 26, 2022, the parties agreed that $156,278.43 is the amount due to NewRez.

It determined that Bridgecrest was entitled to a disbursement in the amount of $22,003.43 and that NewRez was entitled to a disbursement in the amount of $106,592.82. NewRez filed a timely notice of appeal to this Court.

## II. ISSUES

NewRez raises the following issues, as stated in its brief, for our review:

1) Whether the probate court erred by failing to payoff a first-priority secured lien on real property sold pursuant to court order.

2) Whether the probate court erred in ruling that a first-priority secured lienholder's claim to proceeds from the sale of encumbered real property by an insolvent estate is subject to general distribution under Tenn. Code Ann. 30-2-317.

The issue presented by this appeal, as we reword it, is:

When a decedent's real property is sold pursuant to Tennessee Code Annotated section 30-2-418 to satisfy claims against the decedent's insolvent estate, must amounts due under a deed of trust perfected during the decedent's lifetime be paid from the sales proceeds before any proceeds are incorporated into the personalty to be distributed under the priority of claims provisions set forth in Tennessee Code Annotated section 30-2-317.

## III. STANDARD OF REVIEW

The issue presented by this appeal involves the interpretation and applicability of state statutes. The construction of a statute and the application of the statute to the facts of a case are questions of law. *Comm'ns of Powell-Clinch v. Util. Mgmt. Review Bd.*, 427 S.W.3d 375, 381 (Tenn. Ct. App. 2013) (citation omitted). We review questions of law *de novo* upon the record with no presumption of correctness for the determination of the trial court. *Id.* (citation omitted).

## IV. ANALYSIS

We begin our discussion with the well-settled maxim that our primary goal when construing a statute is to effectuate the intent of the General Assembly. *Comm'ns of Powell-Clinch*, 427 S.W.3d at 381 (citation omitted). We accordingly "apply the plain and normal meaning of the words" used in the statute, interpreting it "without a forced interpretation that would limit or expand the statutes application." *Id.* at 382 (quoting *State v. White*, 362 S.W.3d 559, 566 (Tenn. 2012) (quoting *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004))) (internal quotation marks omitted). However, "the

language of a statute cannot be considered in a vacuum, but 'should be construed, if practicable, so that its component parts are consistent and reasonable.'" *In re Estate of Tanner*, 295 S.W.3d 610, 614 (Tenn. 2009) (quoting *Marsh v. Henderson,* 221 Tenn. 42, 424 S.W.2d 193, 196 (1968)). Statutes related to the same subject and sharing a common purpose must be construed together, "and the construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013) (citations omitted). When separate statutes manifest an "unfortunate tension between two important policy considerations[,] . . . it is not our duty to re-weigh the[] competing concerns." *Estate of Tanner*, 295 S.W.3d at 617. Rather, we must consider the statutes in context "to determine the balance that was struck by the General Assembly." *Id.*

The status of the law is determined by the statutes and the case law construing those statues. *See Coffman v. Armstrong Int'l*, 615 S.W.3d 888, 896 (Tenn. 2021) (construing a manufacture's duty to warn under the Tennessee Products Liability Act and relevant case law). Indeed, case law may constitute a significant portion of the jurisprudence governing a matter. *See State v. Jarman*, 604 S.W.3d 24, 44-48 (Tenn. 2020) (considering the body of case law comprising Tennessee jurisprudence governing jury instructions). It is well-settled, furthermore, that the supreme court's decision on a particular issue is binding on this Court and the trial courts. *Webb v. Nashville Area Habitat for Humanity*, 346 S.W.3d 422, 430 (Tenn. 2011).

Additionally, our supreme court has opined that "'new statutes change pre-existing law only to the extent expressly declared.'" *Johnson v. Hopkins*, 432 S.W.3d at 848 (quoting *State v. Dodd,* 871 S.W.2d 496, 497 (Tenn. Crim. App. 1993)). A statute that does not repeal a previous law – directly or by implication – "is cumulative to such law and repeals by implication are not favored." *Id*. (quoting *McDaniel v. Physicians Mut. Ins. Co.,* 621 S.W.2d 391, 394 (Tenn. 1981) (quoting *Hibbett v. Pruitt,* 162 Tenn. 285, 36 S.W.2d 897, 900 (1931))) (internal quotation marks omitted). The courts presume that the legislature is aware of the status of the law when it enacts or modifies a statute, and that if it "intend[s] to effectuate a significant change in the law [it] would [do] so in a clear and straightforward manner." *Piper v. City of Memphis*, 861 S.W.2d 832, 834 (Tenn. Ct. App. 1992) (citation omitted).

With these guiding principles in mind, we turn to the issue presented by this appeal.

## A. Arguments of the Parties

NewRez submits that "[t]he main question of this appeal comes down to whether an insolvent estate may use the probate court to reduce the balance of a mortgage made by the decedent via pro-rata payment of the debt after a judicially ordered sale of the real property." It maintains that the probate court "reduced the secured debt of NewRez by almost $45,000.00 after it ordered the sale of real property by classifying NewRez, a first-

priority secured lienholder, as a creditor subject to pro-rata distribution of the assets of the Estate pursuant to Tenn. Code Ann. § 30-2-317." It also maintains that the "error of the trial court is especially egregious in that instead of remitting payment in full to NewRez as required by law, the trial court placed the Estate's attorney's fees, totaling over $47,000.00, in a superior position over a first-priority secured lien on real property."

NewRez contends that the court's release of its secured lien though judicial sale without paying the secured debt in full is contrary to Tennessee law with respect to real property and that "it undermines the statutory scheme for the priority of registered instruments as to real property within the State." NewRez references Tennessee Code Annotated section 66-26-105 in support of the proposition that the Tennessee Code gives priority status to its recorded security interest. It asserts that, contrary to the contention of the Estate, Title 30 and Title 66 "should be read in conjunction with each other as shown by the long-standing case law in Tennessee," and that one statutory scheme should not "prevail over the other." It submits that "[s]tripping the rights of secured lienholders due to a borrower's inability to pay his debts negates the very purpose a secured lien and cannot be upheld by this Court."

NewRez cites historic case law for the proposition that Tennessee courts have long-recognized the priority of a deed of trust when real property is brought into an insolvent estate. It submits that the Deed of Trust "is an *in rem* claim against the Property[;]" that title vested in Mr. Wallace's heirs upon his death; that the Property was not part of the Estate prior to the court's September 2020 order; and that NewRez's claim is not a creditor claim governed by section 30-2-317. NewRez submits that if the 2019 private sale had been successful, "the Deed of Trust would have been paid in full at the closing of the sale outside of the purview of the Probate Court." NewRez quotes ***Woman's Coll. v. Home***, 60 S.W. 609 (Tenn. Ct. App. 1900), in support of its position that it has a "prior right" to the proceeds of the sale of the Property and the "equity of the estate is simply in the surplus that may be left after the satisfaction of the debt, and, if no surplus is left after a fair execution of the trust, there is nothing for the rights of creditors or the estate to attach to." NewRez maintains that "[t]he case law is clear, stretching back 170 years, that neither death nor an insolvent estate may disturb a lien on real property secured in the life of the decedent."

NewRez also contends that treating "a first-priority secured lienholder of real property as creditor subject to pro-rata distribution in insolvent estates . . . would open the gates to potential abuse of insolvent estate administration." It submits that "[s]uch a decision by this Court would invite every estate attorney to incur exorbitant expenses and attorney's fees as to their client and then be paid directly from the proceeds of the sale of real property in a superior position to that of a secured lienholder. This is not to say that counsel for an estate should not be paid for their services through the estate funds, but it is important to distinguish that attorney's fees do not hold super-priority over secured debts on realty made in the life of the decedent."

Finally, NewRez contends that the priority position of the Deed of Trust was acknowledged by the probate court in its September 2020 order and by the Special Commissioner, who "followed the established practice of paying the Deed of Trust in full and then depositing the remaining funds with the trial court for distribution to the creditors of the Estate[,]" in his October 2020 report. It asserts that, as a matter of policy, "if trial courts were allowed, on their own volition, to determine and set the balances they deem "reasonable" for all prior secured liens of real property after a court ordered sale, such actions would undermine the statutory scheme for perfecting secured liens on real property and the lienholders' rights to enforce the secured lien." NewRez contends that "it is the standard practice of Tennessee courts that secured liens on real property sold under judicial order are to be paid directly from the proceeds of the sale, and the excess proceeds are then eligible for distribution to an insolvent estate. Through this interpretation, the race-notice recording system instituted in Tenn. Code Ann. § 66-26-105 and general principles controlling conveyances of real property are upheld concurrently with the statutory distribution of insolvent estate assets found in Tenn. Code Ann. § 30-2-317."

The Estate, on the other hand, asserts that the probate court properly utilized the Property to satisfy claims against the Estate under Tennessee Code Annotated sections 30-2-418 and 30-5-101, *et seq.* It asserts that Tennessee Code Annotated section 30-2-103 mandates that, when a notice of insolvency is filed, the personal representative must file an accounting of the assets of the estate and "a proposed plan of distribution in accordance with § 30-2-317." It contends that the "hierarchy for categorizing and computing payments" contained in section 30-2-317 accordingly is applicable to the proceeds of the sale of real property brought into an insolvent estate. The Estate also asserts that the indebtedness of an estate includes administrative expenses and inheritance and estate taxes. It submits that the "ranking method in the statute [section 30-2-317] is quite broad in that it applies to the courts, funeral homes, both federal and state taxing authorities, the Bureau of TennCare, city and county governments, and all other creditors of a decedent's estate." The Estate asserts that, under the insolvency statutes, "once the trial court divested ownership of the Property from [Mr. Wallace's] [c]hildren and took jurisdiction over the Property[,]" section 30-2-317 became applicable "to all interested parties who are owed funds . . . including NewRez."

The Estate submits that Title 66 "does not override the application of Title 30 in an insolvent estate." It asserts that:

> an interpretation that allows Title 66 to override Title 30 would violate the rules of statutory construction. In the process of bringing an estate administration to a final conclusion, certain obligations must be paid before others, and the Tennessee legislature created a hierarchy for just this purpose when it created Tenn. Code Ann. § 30-2-317. Title 66 makes no attempt to resolve a decedent's business affairs because that is the purpose of Title 30,

- 10 -

which further buttresses why Title 30 must control in the instant case.

The Estate analogizes the priority of claims provisions of section 30-2-317 to provisions in a bankruptcy proceeding, asserting:

> In completing this sale of real estate, both the bankruptcy trustee and the trustee's agents are compensated for their work in liquidating the real estate, and this compensation is paid before any creditor, including those creditors holding a security interest in the real estate, and this happens despite the fact that the bankruptcy trustee is not a secured creditor because a failure to compensate the trustee would cause the system to breakdown. Similarly, the law for the administration of insolvent estates requires that court costs, administrative expenses, and funeral expenses be paid first even though those expenses are unsecured. Here, as with a bankruptcy trustee, the estate's administrative costs are superior in right to those of secured creditors in accordance with the legislature's priority hierarchy set forth in Title 30. Tenn. Code Ann. § 30-2-317.

The Estate submits that provisions of section 30-2-317 reflect the General Assembly's intention as a matter of policy. It asserts that the section "was established by the Tennessee legislature to make sure society functions and the most critical aspects of society with respect to decedents are paid first." It further asserts that "in creating the procedure for insolvent estates set forth in Tenn. Code Ann. § 30-5-101, et seq., the Tennessee legislature acknowledged a lack of assets in certain instances and provided the framework for resolving those issues." It submits that statute explicitly requires court costs and administrative fees and expenses to be paid first. It maintains that "[t]he reasoning behind this is clear, an unpaid judicial system would eventually breakdown and unpaid administrators and counsel would refuse to get involved." The Estate contends that the application of section 30-2-317 "is the most appropriate means of resolving a decedent's obligations in such a way as to minimize the burden on society."

The Estate urges that the historical caselaw sited by NewRez is inapplicable to this case because it "deal[t] with priority among secured versus unsecured creditors rather than the expenses of administration that are at issue in this case." It asserts that NewRez's "arguments attempt to re-characterize priority expenses of administration (i.e., court costs, administrative fees and expenses, attorney's fees and expenses, funeral expenses, etc.) as general unsecured creditor claims, which effectively, and improperly, nullifies the purpose of the priority claim provisions in Title 30." It argues that the probate court did not alter NewRez's standing as a secured creditor, but instead "applied Title 66 . . . through the lens of Title 30 . . . and protected NewRez's security interest to the extent the underlying funds were available to do so."

- 11 -

## B. The Statutes

Tennessee Code Annotated section 31-2-103, provides, in relevant part:

The real property of an intestate decedent shall vest immediately upon death of the decedent in the heirs as provided in § 31-2-104.[8] . . . Upon qualifying, the personal representative shall be vested with the personal property of the decedent for the purpose of first paying administration expenses, taxes, and funeral expenses and then for the payment of all other debts or obligations of the decedent as provided in § 30-2-317. If the decedent's personal property is insufficient for the discharge or payment of a decedent's obligations, the personal representative may utilize the decedent's real property in accordance with title 30, chapter 2, part 4. After payment of debts and charges against the estate, the personal representative shall distribute the personal property of an intestate decedent to the decedent's heirs as prescribed in § 31-2-104, and the property of a testate decedent to the distributees as prescribed in the decedent's will.

Tennessee Code Annotated section 30-2-401 gives the probate court "concurrent jurisdiction with the chancery and circuit courts to sell real estate of decedents[,]" and section 30-2-402 provides, in relevant part, that the personal representative may file a petition for the sale of the decedent's real property, "or so much of the land as may be necessary," when "the personal property available appears to be insufficient to pay debts and expenses."

Section 30-2-404 mandates that, "[b]efore making a decree for the sale of lands," the court must be satisfied "that the personal estate has been exhausted in the payment of bona fide debts, and that the debts or demands for which the sale is sought are justly due and owing either to creditors or to the personal representative for advances out of the personal representative's own means to pay just demands against the estate." An action prosecuted under the section "shall be conducted as other suits in equity." Tenn. Code Ann. § 30-2-405.

Section 30-2-418 gives the court the authority to order the sale of real property. The section provides, in relevant part:

In the case of a will that does not give the personal representative the power to sell real estate, and in intestate estates, when the personal estate is ascertained by the report of the clerk, and the confirmation of the report by

---

[8] Section 31-2-104 provides, in relevant part, that if no spouse survives an intestate decedent, as is the case here, the entire intestate estate passes to the decedent's children. Tenn. Code Ann. § 31-2-104(b)(1).

the court, to be insufficient for the payment of the debts of the estate, administrative expenses, inheritance taxes and estate taxes, the court shall direct that the real estate, subject to sale, or so much of the real estate as is necessary, be sold for the payment of the debts, expenses and taxes.

Tenn. Code Ann. § 30-2-418(a).  The section further provides that the court may order the sale of real property after notice to the parties and after considering the appraisal of a "qualified appraiser as to the fair market value of the property."  Tenn. Code Ann. § 30-3-418(d).

Tennessee Code Annotated section 30-2-317 sets forth the "priorities and preferences" of claims and demands against an estate.  Section 30-2-317 provides:

(a) All claims or demands against the estate of any deceased person shall be divided into the following classifications, which shall have priority in the order shown:

(1) First: Costs of administration, including, but not limited to, premiums on the fiduciary bonds and reasonable compensation to the personal representative and the personal representative's counsel;

(2) Second: Reasonable funeral expenses;

(3) Third: Taxes and assessments imposed by the federal or any state government or subdivision of the federal or any state government, including claims by the bureau of TennCare pursuant to § 71-5-116 and including city and county governments; and

(4) Fourth: All other demands that may be filed as aforementioned within four (4) months after the date of notice to creditors.

(b) All demands against the estate shall be paid by the personal representative in the order in which they are classed, and no demand of one class shall be paid until the claims of all prior classes are satisfied or provided for; and if there are not sufficient assets to pay the whole of any one class, the claims in that class shall be paid pro rata.

(c) Debts due upon bills single, bonds, bills of exchange and promissory notes, whether with or without seal, and upon settled and liquidated accounts signed by the debtor, are of equal dignity, unless otherwise provided, and are to be paid accordingly.

(d) The personal representative shall hold aside sufficient funds or other assets to pay each contested or unmatured claim (or the proper ratable portion

thereof, as the case may be) with interest (if the claim be one bearing interest), until it is determined whether or not the claim is to be paid, or until an unmatured claim has reached maturity, also sufficient assets to meet the expenses of pending litigation and costs of court and any unpaid taxes.

The statutes governing the administration of estates unambiguously authorize the probate court to assume jurisdiction over a decedent's real property and to order the sale of that property if it determines that the personal property of the estate is insufficient to satisfy the debts of the decedent and claims against the estate. Title 30 is silent, however, with respect to whether, when real property encumbered by indebtedness secured by a properly executed and recorded deed of trust is sold pursuant to chapter 2, part 4 of the title, the claim of the first lien-holder secured under the deed of trust is a non-priority claim subject to pro rata distribution under section 30-2-317 notwithstanding the recording and priority provisions contained in Title 66.

We respectfully disagree with the Estate that the "[r]ules of statutory construction . . . direct that Title 30 control the application of Title 66 in this instance." As the Estate asserts, Title 30 provides the mechanism by which real property may be utilized to satisfy claims against an insolvent estate. It does not, however, expressly supersede the priority provisions of Title 66.

Tennessee Code Annotated section 66-26-102 provides:

All of the instruments registered pursuant to § 66-24-101 shall be notice to all the world from the time they are noted for registration, as prescribed in § 8-13-108; and shall take effect from such time.

Section 66-26-105 provides:

Any instruments first registered or noted for registration shall have preference over one of earlier date, but noted for registration afterwards; unless it is proved in a court of equity, according to the rules of the court, that the party claiming under the subsequent instrument had full notice of the previous instrument.

We agree with the parties that the provisions of Title 30 and Title 66 seek to strike a balance between competing interests. Additionally, we observe that sections 66-26-105 and provisions governing the sale of real property to satisfy the debts of an insolvent estate both sound in equity. Significantly, as discussed below, notwithstanding the evolution of statutes relating to both the administration of estates and real property rights, the equitable balance considerations contained in contemporary Titles 30 and 66 have been a part of Tennessee policy and jurisprudence since the early 19th century. We accordingly turn to

the historic case law addressing these considerations.

## C. Case Law

We begin our discussion of the case law by observing that the parties do not dispute the probate court's authority to order the sale of the Property in this case, nor do they challenge the conduct of the sale itself. It is also undisputed that any surplus from the sale remaining after payment of the balance of the loan would be an asset of the Estate subject to disbursement in accordance with Tennessee Code Annotated section 30-2-317. The parties also do not dispute the priority provisions contained in Title 66. The only question posed by this case is whether section 30-2-317 is applicable to the claim of a first lienholder under a properly executed and recorded deed of trust when the encumbered real property is sold to satisfy the debts of an insolvent estate.

The Estate asserts that "the law for the administration of insolvent estates requires that court costs, administrative expenses, and funeral expenses be paid first even though those expenses are unsecured." It cites no case law in support of this proposition, but relies exclusively on the "priority hierarchy" contained in section 30-2-317 and relevant portions of 2 Pritchard on the Laws of Wills and Administration of Estates § 913-918 (2021). The Estate distinguishes cases relied on by NewRez, asserting that those cases relate to the competing rights of creditors and the priority of claims between secured and unsecured creditors and not to the priority status of claims enumerated by section 30-2-317(a)(1)(2)&(3). It contends that the case law does not establish that the probate court erred by categorizing NewRez as a creditor under section 30-2-317(c); that the probate court did not fail to take NewRez's status as a secured creditor into account; that the claims of the secured creditors took priority over unsecured claims; and that the court correctly directed the claims of the Estate's two secured creditors to be paid on a pro rata basis as provided by section 30-2-317(b). The Estate cites the rules of statutory construction set-forth in *In re Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009), for the proposition that "[t]he cases cited by Appellant do not change the presumption that laws should be applied as written." However, it cites no case law in support of its contention that "the hierarchy for ranking and paying the Estate's claims and demands, as set forth in Tenn. Code Ann. § 30-2-317, applies to all interested parties who are owed funds by a decedent, including NewRez, once the trial court divested ownership of the Property from Decedent's Children and took jurisdiction over the Property."

NewRez, on the other hand, relies primarily on case law from the 19th and early 20th centuries in support of its assertion that a priority first lien secured by a deed of trust must be satisfied before any proceeds from the sale of encumbered real property are brought into an estate to satisfy claims in accordance with section 30-2-317. It relies on *Fields v. Wheatley's Creditors*, 33 Tenn. (1 Sneed) 351 (Tenn. 1853); *Winton v. Eldridge*, 40 Tenn. (3 Head) 361 (Tenn. 1859); *Kinsey v. McDearmon*, 45 Tenn. (5 Cold) 392 (Tenn. 1868); and *Woman's Coll. v. Home*, 60 S.W. 609 (Tenn. Ct. App. 1900) in support of its assertion

that "it is well-established that [a] secured lienholder on real property holds a superior interest to other creditors of an insolvent estate[]" and "if the sale proceeds were not enough to satisfy the debt of the lienholder, the deficiency balance would be eligible for a pro-rata share of the remaining assets of the estate with the other creditors."

It appears that NewRez found no contemporary case law in support of its position, and it also appears that our courts have not addressed the applicability of current section 30-2-317 to a first lien-holder under a deed of trust when real property is sold pursuant to section 30-2-401, et seq. NewRez contends, however, that the distribution recommended by the Special Commissioner followed established practice by satisfying amounts due under the Deed of Trust and allocating any surplus to the assets of the Estate. We accordingly turn to the evolution of the case law addressing the public policies furthered by the relevant portions of the Tennessee Code.

We begin by noting that the courts have long recognized that foreclosure is an equitable, quasi in rem proceeding. *Freeman v. Alderson*, 119 U.S. 185, 187 (1886); *see Knapp v. Supreme Commandery, United Order of the Golden Cross of the World*, 118 S.W. 390, 394 (Tenn. 1908). Further, it is well-settled in Tennessee that:

> " '[t]he legislature has determined that the public policy of the state is to allow foreclosure through non-judicial sale.' " *Threadgill v. Wells Fargo Bank, N.A.*, No. E2016-02339-COA-R3-CV, 2017 WL 3268957, at *2 (Tenn. Ct. App. Aug. 1, 2017) (quoting *CitiMortgage, Inc. v. Drake*, 410 S.W.3d 797, 808 (Tenn. Ct. App. 2013)). Nonjudicial foreclosure is the almost exclusive means of foreclosure in this State, and the statutes governing it are outlined in Tennessee Code Annotated sections 35-5-101, *et seq*. *Id.* "[S]o long as a mortgagee lender complies with the applicable statutes and the terms of the deed of trust, it does not have to resort to a judicial forum to foreclose on a secured property." *Id.* (internal citation omitted).

*Smith v. Hughes*, 639 S.W.3d 627, 639 (Tenn. Ct. App. 2021). Accordingly, "[b]ecause foreclosure in not a judicial remedy in Tennessee[,] . . . a trustee may conduct a foreclosure sale without making any filing in court." *Threadgill v. Wells Fargo Bank, N.A.*, No. E2016–02339–COA–R3–CV, 2017 WL 3268957, at *3 (Tenn. Ct. App. Aug. 1, 2017) (quoting *Robertson v. U.S. Bank, N.A.*, 831 F.3d 757, 765 (6th Cir. 2016) (citing Tenn. Code Ann. § 47–9–609(b)(2); *see, e.g.,id.* § 35–5–101)). Thus, as NewRez contends in its brief, it would have been within its rights to foreclose on the Property for lack of payment on the debt secured by the Deed of Trust had the probate court denied the Estate's March 2019 motion for an injunction.

We also observe that, although real property passing by devise or descent may be reached by the personal representative to discharge the debts of an insolvent estate,

property passing by deed by right of survivorship cannot be so utilized. ***In re Estate of Vincent***, 98 S.W.3d 146, 149 (Tenn. 2003). However, absent exoneration under the terms of a sole mortgagor/decedent's will, when property passes by deed by right of survivorship, the survivor takes the property subject to any deed of trust and must continue to make payments to avoid foreclosure. ***Id.*** If the survivor does not assume payments on the mortgage, the decedent/mortgagor's estate is responsible for any deficiency that might result on foreclosure. ***Id.*** at 150.

The priority provisions now contained in Title 66 likewise are well-settled. The Tennessee courts have long held that '[t]he deed first registered must be given priority[.]" ***Hammock v. Qualls***, 201 S.W. 517, 518 (Tenn. 1918). They have likewise long-held that an unregistered deed "shall be null and void as to existing and subsequent creditors of, or bona fide purchasers from, the makers, without notice." ***Wilkins v. McCorkle***, 80 S.W. 834, 835 (Tenn. 1904) (citing Shannon's Code, § 3752). However, "[a]ny instruments first registered or noted for registration shall have preference over one of earlier date, but noted for registration afterwards; unless it is proved in a court of equity, according to the rules of the court, that the party claiming under the subsequent instrument had full notice of the previous instrument." Tenn. Code Ann. § 66-26-105; ***Watson v. Watson***, 658 S.W.2d 132, 134 (Tenn. Ct. App. 1983).

It also is well-settled in Tennessee that the real property of an intestate decedent vests immediately in the heirs. Tennessee Code Annotated § 31-2-103; ***In re Estate of Trigg***, 368 S.W.3d 483, 501 (Tenn. 2012). Accordingly, the decedent's personal representative has no power over or interest in the decedent's real property unless the court determines that the personal estate is insufficient to satisfy the bona fide debts and expenses of the estate. Tennessee Code Annotated §§ 31-2-103 & 30-2-404; *See id.* This has been the state of the law in Tennessee since at least 1827. ***Kindell v. Titus***, 56 Tenn. (9 Heisk) 727, 731 (Tenn. 1872); ***Whitmore v. Johnson's Heirs***, 29 Tenn. (10 Hum.) 610, 612-613 (Tenn. 1850). Like the 1827 statute, Tennessee Code Annotated section 30-2-418 permits the court to order the sale of "real estate . . . or so much of the real estate as is necessary" to pay the debts, expenses and taxes of the estate. Like its precursors, Title 30 requires the court to be satisfied that the "personal estate has been exhausted in the payment of bona fide debts" before the court orders the sale of real property. Tennessee Code Annotated § 30-2-404; **see *Kindell***, 56 Tenn. at 740; ***Whitmore***, 29 Tenn. at 612.

The precursor to section 30-2-317 was enacted in chapter 36 of the Acts of 1833, which gave "priority to certain debts, and amongst others, to debts and arrearages due to the state[.]" ***Fields v. Wheatley's Creditors***, 33 Tenn. (1 Sneed) 351, 353 (Tenn. 1853). In ***Fields***, funds arising from the sale of a decedent's land were paid first to satisfy a prior vendor's lien for unpaid purchase-money, and then to the Bank of Tennessee in payment of a mortgage debt. The proceeds from the sale of the land were insufficient to fully satisfy the mortgage however, and the court held that the bank was entitled to a pro rata division of the remaining assets of the estate as a general creditor. In affirming the chancery court,

The ***Fields*** court opined:

> The statutes regulating the administration of insolvent estates were not intended, and cannot be construed, to affect, in the remotest degree, liens acquired in the lifetime of the deceased insolvent. They contemplate only a ratable division of the assets which by law are subject to the satisfaction of the general creditors.

*Id.* at 354-55.  The Tennessee Supreme Court expanded on its holding in ***Fields*** in ***Winton v. Eldridge***, stating:

> We have settled, in the case in 1 Sneed, 354, that the statutes regulating the distribution of insolvent estates, were not intended to affect liens, upon any part of the property of the estate, acquired and fixed in the lifetime of the deceased. These rights continue as if there had been no death, and no statutes on the subject, so far as their priority of satisfaction is concerned. The property on which the lien exists, goes into the estate incumbered with the lien debts. Or more correctly speaking, it is only what remains after the discharge of the incumbrance, that goes into the fund for distribution.

***Winton v. Eldridge***, 40 Tenn. (3 Head) 361, 362 (Tenn. 1859).  The ***Winton*** court characterized the "right of lien" as "distinct" and "independent" and reiterated that, if the lien is not satisfied with the proceeds of the sale of land, "the favored creditor" has a right to a pro rata distribution of other assets with all other creditors in satisfaction of the remaining debt.  *Id.*  In ***Kinsey v. McDearmon***, the court opined that, under the "rule of law[]" established in ***Fields*** and ***Winton***,

> a subsisting lien acquired and fixed in the lifetime of a deceased insolvent, which is capable of being enforced in a court of equity upon the application of the party in whose favor it exists, may be asserted after the death of such insolvent; and it makes no difference how such lien was created, so it is a fixed, subsisting and valid charge upon the estate; or whether it might have been defeated by the superior diligence of other creditors.

***Kinsey v. McDearmon***, 45 Tenn. (5 Cold) 392, 399-400 (Tenn. 1868).

In ***Gwynn v. Estes***, the court reiterated and summarized its holdings in ***Fields***, ***Winton***, and ***Kinsey***, stating:

> In the case of ***Fields v. Wheatley***, 1 Sneed, [351, 354-355], it was held: "The statutes regulating the administration of insolvent estates were not intended, and could not be construed, to affect in the remotest degree liens acquired in the lifetime of the deceased insolvent.  They contemplate only a ratable

- 18 -

division of the assets, which, by law, are subject to the satisfaction of the general creditors." In the case of **Winton v. Eldridge**, 3 Head, 36: "These rights continue as if there had been no death and no statutes on the subject, so far as their priority of satisfaction is concerned. The property on which the lien exists goes into the general estate encumbered with the lien debts." In **Kinsey v. McDearmon**, 5 Cold., 398-9: "A lien by contract as security to reimburse a surety, though unregistered, was held to have precedence over the general creditors of the estate. This being so, the case is stronger of a lien registered after the death, no creditor having fastened any lien upon the property before registration. The deed relates back to its date."

**Gwynn v. Estes**, 82 Tenn. (14 Lea) 662, 673-74 (Tenn. 1885). The **Gwynne** court also characterized the administrator's "commission" as an "allowance" from the funds available to the creditors of the estate. **Id.** at 674-75.

The court first addressed the statutory requirement of a pro rata distribution among creditors' claims against an insolvent estate in **Henderson v. McGhee**, 53 Tenn. (6 Heisk) 55 (Tenn. 1871). The **Henderson** court construed Section 2326 of the Code as it then existed to "expressly break[] down all distinction in the dignity of debt, and treat[] all as of equal grade[.]"[9] **Id.** at 57. It further opined that a suggestion of insolvency effectively "makes each creditor whose debt or claim is properly authenticated a quasi judgment creditor[]" and a creditor who claims under an unregistered mortgage "has no priority over other creditors[.]" **Id.** Thus, the courts characterized a lien-holder under a properly recorded deed of trust as a "favored creditor" with a "distinct" and "independent" right and the holder of an unperfected mortgage as a general creditor subject to a pro rata distribution of the assets of an insolvent estate.

Our courts have observed that the object of the statutorily mandated pro rata distribution of the assets of an insolvent estate "is to secure equality of distribution among creditors of all the assets, real and personal." **Barchus v. Peters**, 4 S.W. 833, 834 (Tenn. 1887). Further, "the legal effect of the suggestion of insolvency is to appropriate the land (with other property) of the debtor for a pro rata distribution among his creditors, *after first satisfying such as had fixed or specific liens*." **Id.** (emphasis added). "The suggestion of insolvency does not defeat liens acquired and *fixed* in the life-time of the debtor[.]" **Id.**

---

[9] The Code then in effect provided:

> Insolvent estates of deceased persons shall be divided among the creditors ratably, and no action brought, judgment, bill single or note shall have precedence over unliquidated accounts, presented and filed, authenticated according to law; but all such claims shall be acted upon as being of equal grade.

**Henderson v. McGhee**, 53 Tenn. 55, 56–57 (1871).

(emphasis in the original). Additionally, a suggestion of insolvency does not "prevent foreclosure of a deed of trust held by a creditor to secure a debt." ***Woman's Coll. v. Horne***, 60 S.W. 609, 612 (Tenn. Ch. App. 1900).

Tennessee courts have consistently held that the priority of a perfected lien against real property continues after the death of the decedent. ***Id.*** at 613; ***Barchus***, 4 S.W. at 834; ***Kinsey***, 45 Tenn. at 399. The only interest in the real property that may be "appropriated" after the death of the decedent is the interest that the decedent had in his lifetime. ***Milligan v. Humbard***, 58 Tenn. (11 Heisk) 137, 140 (Tenn. 1872). "[T]he equity of the estate is simply in the surplus that may be left after the satisfaction of the debt, and, if no surplus is left after a fair execution of the trust, there is nothing for the rights of creditors or the estate to attach to." ***Woman's Coll.***, 60 S.W. at 613.

The background facts set-forth in contemporary cases addressing issues relating to the administration of insolvent estates establish that this historic precedent has not been overruled and continues to be accepted practice. The decedent's indebtedness under a deed of trust recorded pursuant to Title 66 must first be satisfied when real property is sold to satisfy the debt of an insolvent estate, and any surplus becomes an asset of the estate. *See* ***Patrick v. Hardin***, 385 S.W.2d 905, 907 (Tenn. 1964); *see also* ***Chapman v. Tipton***, 292 S.W.2d 25, 26 (Tenn. 1956).

More than 100 years ago, our supreme court observed that the "sole purpose" of the statutory provisions regarding the distribution of the assets of an insolvent estate was to place creditors on "the same footing – that of absolute equality, by compelling a pro rata distribution of the assets . . . which by law are subject to the satisfaction of the general creditors." ***Richardson v. Vick***, 145 S.W. 174, 177 (Tenn. 1910). The ***Richardson*** court cited ***Fields***, ***Winton***, and ***Barchus*** and reiterated that the distribution provisions were "not intended to affect or impair the liens acquired or fixed upon the property of debtors when in life[.]" ***Id.***

We must disagree with the Estate that current section 30-2-317 permits an insolvent estate to utilize the proceeds of the sale of the decedent's real property to pay other expenses, debts or claims without first satisfying any encumbrance due under a recorded deed of trust. A mortgagee "has a legally protected property interest[,]" ***Mortg. Elec. Registration Sys. v. Ditto***, 488 S.W.3d 265, 282 (Tenn. 2015) (quoting ***Mennonite Bd. of Missions v. Adams***, 462 U.S. 791, 798 (1983)), and the courts have long-held that the suggestion of insolvency does not displace a lien that was fixed in the decedent's lifetime. ***Barchus***, 4 S.W. at 834. Succinctly stated, "the probate process does not extinguish a real estate mortgage[.]" ***Summers v. Financial Freedom Acquisition LLC***, 807 F.3d 351, 358 (1st Cir. 2015). The Estate cites no case law in support of its position that Title 30 displaces a perfected deed of trust, and we find none. The interest of an insolvent estate in the proceeds generated by the sale of real property pursuant to Tennessee Code Annotated section 30-2-418 is in the surplus remaining after satisfaction of a deed of trust perfected

- 20 -

in accordance with Title 66.

## V. CONCLUSION

The judgment of the trial court is reversed. The trial court is instructed to order the clerk to distribute $156,278.43 to NewRez from the proceeds being held. This matter is remanded to the trial court for entry of judgment consistent with this Opinion. The Estate's request for attorney's fees on appeal is denied. Costs on appeal are taxed one-half to the Appellee, the Estate of Clint Wallace, and one-half to Appellant, NewRez, LLC, for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE